601 P.2d 1322

**The STATE of Arizona, Appellee,**

v.

**Robert Paul BROOKOVER, Appellant.**

**No. 4426.**

Supreme Court of Arizona,
In Banc.

Oct. 2, 1979.

Rehearing Denied Nov. 6, 1979.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Jessica L. Gifford, Asst. Attys. Gen., Phoenix, for appellee.

Erlichman, Fagerberg & Margrave, P. A. by Joseph Erlichman, Kenneth E. Chase, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal by the defendant, Robert Paul Brookover, from a jury verdict and

judgment of guilt to the crime of murder in the first degree, A.R.S. § 13–454,* with a sentence thereon of death. We have jurisdiction pursuant to A.R.S. § 13–4031.

Although the defendant raises four questions on appeal, the thrust of defendant's brief is addressed solely to the question of the imposition of the death penalty. He asks that the death penalty be reduced by this court to life imprisonment without possibility of parole for 25 years. Since we agree that the death penalty must be set aside, we need not consider other issues raised by the defendant and need answer only the following questions on appeal:

1. Was the crime committed in an especially heinous, cruel or depraved manner?

2. Was the aggravating circumstance outweighed by the mitigating circumstance?

The facts necessary for a determination of this matter are as follows. Defendant and two others, Paul Zisser and Stanley Akers, Jr., were approached by Steven McCloud about the prospects of purchasing a large quantity of marijuana. Defendant agreed to purchase the marijuana and a meeting was arranged at which time the marijuana was sampled for quality. A third meeting was then scheduled to take place at defendant's home at which time the delivery of approximately 750 pounds of marijuana was to be made. Akers and McCloud went to meet the victim, Gregory Case, and returned to defendant's house where the marijuana was unloaded and weighed. As the weighing neared completion, Akers asked the defendant about the money and the defendant told Akers that it would be produced as soon as the weighing was completed. At that point defendant went in to the bedroom and pulled out a gun and told Akers there would be no money and that he was going to take the marijuana. The defendant then went into the living room and shot the victim once in the back. The victim fell to the floor moaning

and asked the defendant what he had done. The defendant said "Don't worry * * * it will be over soon" and shot him once more in the back. After Zisser and Akers left, defendant and McCloud moved the victim's body into the victim's van, drove the van to the airport and abandoned it there.

Based on evidence provided by Akers, Zisser and McCloud, the defendant was subsequently arrested and was convicted, on 5 June 1978, by a jury of first degree murder. After a presentence hearing in aggravation and mitigation, the trial court issued its special verdict which read in part as follows:

"Based upon the presentation of information at the sentencing hearing and the evidence admitted at the trial of this case, the court makes the following findings as to the existence or non-existence of each of the aggravating circumstances enumerated in subsection (E) of A.R.S. Sec. 13–434 [13–454] and as to the existence or non-existence of any mitigating circumstances whether or not mentioned in A.R.S. Sec. 13–434 [13–454] which the Defendant presented.

"AGGRAVATING CIRCUMSTANCES as to the Defendant Robert Paul Brookover:

"1. The Defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable.

FINDING: The court finds that this circumstance *does* exist

* * * * * *

"The court takes judicial notice of the relevant matters in the Superior Court of Maricopa County Arizona File # 97418 entitled *State of Arizona v. Robert Paul Brookover*. In the latter cause, the defendant was convicted and judgment entered against him for possession of marijuana for sale, with a prior conviction. The prior conviction was the State of

---

* Title 13 citations in this opinion are to the Arizona Criminal Code as it existed prior to its extensive revision effective 1 October 1978.

**40**

Ohio conviction in Cause No. 74 CR 69 entitled *State of Ohio v. Bobby Brookover* on September 13, 1976.

"Sale of marijuana under the laws of the State of Arizona as set forth in Sec. 36–1002.07 is punishable by imprisonment from 5 years to life imprisonment. Defendant has therefore been convicted of another offense which under Arizona Law carries a possible sentence of life imprisonment, and is therefore an aggravating circumstance.

\* \* \* \* \* \*

"6. The Defendant committed the offense in an especially heinous, cruel or depraved manner.

FINDING: The court finds that this circumstance *does* exist.

The evidence submitted at the trial established that the murder of Gregory Case was committed by the Defendant at Defendant's home on June 22, 1977 in Scottsdale, Arizona. Gregory Case, the victim, arrived at the Defendant's home with a load of marijuana in a van. The marijuana was unloaded into the Defendant's house where it was weighed. When the weighing was almost completed, the victim demanded to see the money. Defendant indicated the money was not there but that he would get it. The victim continued the weighing. Shortly thereafter Defendant pulled a .38 caliber revolver and without saying anything shot the victim Gregory Case in the back. The victim fell to the floor. Defendant stood over the victim and in response to the victim's statement that 'you hurt me' or 'it hurts,' the Defendant responded 'don't worry, buddy, it'll be ok' and shot the victim in the back again. The body was taken by the Defendant and a third party in the van to the Phoenix Sky Harbor parking lot and abandoned. Two theories are advanced and accepted by the court as motives for the crime:

1. That the Defendant committed this deliberate act of murder to 'rip off' the marijuana;

2. That the murder was committed to impress the other narcotic traffickers present that he was a 'heavyweight' and capable of committing a cold and deliberate homicide.

"The court finds that the murder of Gregory Case, by shooting him in the back and while helpless on the floor, for either or both of the reasons mentioned, is an especially heinous, cruel and depraved act."

## WAS THE CRIME COMMITTED IN A SPECIALLY HEINOUS, CRUEL AND DEPRAVED MANNER?

■ The Florida Supreme Court has discussed the meaning of "heinous," "atrocious," and "cruel," as applied to conduct which may be considered in applying the death penalty:

"\* \* \* It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—the conscienceless or pitiless crime which is necessarily torturous to the victim." *State v. Dixon*, 283 So.2d 1, 9 (Fla.1973). See also *Halliwell v. State*, 323 So.2d 557 (Fla.1975).

In *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), where the victim was shot four times in the back during a burglary of a house and in which the victim had obtained a gun and was shooting at a codefendant, we stated:

"Although this murder is, as is any murder, shocking, the conduct of the defendant does not comply with the legislative intent. We do not believe that the killing of the defendant was in a particularly heinous, cruel or depraved manner as contemplated by the statute and that aggravating factor number 6 of A.R.S. § 13–454(E) was not shown." *State v. Watson*, supra, 120 Ariz. at 448, 586 P.2d at 1260.

In the instant case, the victim was shot twice in the back. While certainly cowardly, it was not done in a particularly cruel or depraved manner. This was not a "conscienceless or pitiless crime which is unnecessarily torturous to the victim." *State v. Dixon,* supra; *State v. Watson,* supra. The actions of the defendant did not set his acts apart from the norm of first degree murder. We do not believe that the murder was committed in an "especially heinous, cruel and depraved manner." A.R.S. § 13–454(E)(6).

## WAS THE AGGRAVATING CIRCUMSTANCE OUTWEIGHED BY THE MITIGATING CIRCUMSTANCE?

█ The trial court found as a mitigating circumstance that defendant's "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13–454(F)(1). This finding in mitigation was supported by the evidence. Dr. Joseph Richard Melendez, a psychiatrist, testified as follows:

"Q With reference to your evaluation, on page two of your report of August 2, 1978, you indicated that Bob Brookover had a—it says 'pre traumatic,'—I presume your meant 'post traumatic, probably of prenatal origin, subtle, neurological lesion.' With reference—

"A Pre traumatic would be in reference to the automobile accident that you commented about already.

"Q That's an accident which occurred I believe in late 1969?

"A Yes.

"Q Then you determined that apparently he had a neurological lesion?

"A Pre existing lesion.

"Q Of what clinical significance is that?

"A The character of the lesion is such that it would be difficult for Mr. Brookover or anyone with this particular kind of lesion to undergo normal character development.

"Q Can you expand on that?

"A The reason being is that the brain system, neurological system is organized in such a manner that information that enters the nervous system cannot be integrated in a smooth, accurate manner, nor can it be stored in an accurate manner.

"Q Can that also create emotional disturbances?

"A Yes. Secondarily it frequently does. In our experience, the reason that I did take this degree of testing with Mr. Brookover, recent literature indicates that at least a 50 to 60 per cent of individuals of this particular situation suffered from this type of lesion and it has a tendency to lead them in the direction of anti social or asocial behavior."

And:

"Q Do you feel then that in your opinion, or do you have an opinion then as to whether or not, again based on your examination of Mr. Brookover, whether or not at the time of the homicide he incurred any loss of touch with reality?

"A Not in the legal sense.

"Q In a psychiatric sense then?

"A In the psychiatric sense, a relinquishment of one's self autonomy, yes.

"Q Would it be fair to say that this capacity to appreciate the wrongfulness of the acts to conform his acts to requirement of law were not so impaired as to constitute a defense to a murder prosecution, but were nevertheless significantly impaired. Would that be a fair statement?

"A Yes. Please let me make it clear that this is strictly in the legal sense. I think from my own professional opinion that individuals like this, psychiatrically, one must consider this a true suspension of reality, but as I understand the legal test, no."

The statute reads:

"D. In determining whether to impose a sentence of death or life imprisonment

without possibility of parole until the defendant has served twenty-five calendar years, the court shall take into account the aggravating and mitigating circumstances enumerated in subsections E and F and shall impose a sentence of death if the court finds one or more of the aggravating circumstances enumerated in subsection E and that there are no mitigating circumstances sufficiently substantial to call for leniency." A.R.S. § 13–454(D).

The statute does not require that the number of aggravating circumstances be weighed against the number of mitigating circumstances. One mitigating circumstance, for example, may be "sufficiently substantial" to outweigh two aggravating circumstances. The converse is also true— one aggravating circumstance could be so substantial that two or more mitigating circumstances would not be "sufficiently substantial to call for leniency." A.R.S. § 13–454(D). Both the trial court and this court then must "weigh" the mitigating circumstances against the aggravating circumstances to determine if leniency is required:

> " * * * the gravity of the death penalty requires that we painstakingly examine the record to determine whether it has been erroneously imposed. (citation omitted) Furthermore, because A.R.S. § 13–454 sets out the factors which must be found and considered by the sentencing court, we necessarily undertake an independent review of the facts that establish the presence or absence of aggravating and mitigating circumstances (citation omitted). We must determine for ourselves if the latter outweigh the former when we find both to be present." *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976).

We believe that defendant's mental condition was not only a mitigating factor, but a major and contributing cause of his conduct which was "sufficiently substantial" to outweigh the aggravating factor of defendant's prior conviction. Under the circumstances, leniency is mandated.

The imposition of the death penalty is set aside and the defendant's sentence is reduced to life imprisonment without possibility of parole for 25 calendar years from the date of sentencing herein. In all other respects, the verdict and judgment are affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.