660 P.2d 460
**STATE of Arizona, Appellee,**

v.

**Jon David GRAHAM, Appellant.**

No. 5506.

Supreme Court of Arizona,
En Banc.

Feb. 9, 1983.
Rehearing Denied March 15, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Gordon J. O'Brien, Lake Havasu City, for appellant.

HAYS, Justice.

Jon David Graham was convicted by a jury of first degree murder and sentenced to death. Graham was indicted by the Mohave County Grand Jury for the shooting death of Guy Weiss.

According to the appellant, near midnight on the night of the murder, Graham had been drinking and talking with 16-year-old Frank Hausen. The two discussed robbing Weiss, and subsequently Hausen went to his brother's home, took a rifle and cartridges, returned and gave them to Graham. Graham went to Weiss' residence and circled the darkened house several times. Graham then knocked a few times at the door and was about to leave when the house lights came on and the front door opened. Graham turned and fired twice in rapid succession through the still closed screen door. Weiss was hit once in the head and once in the chest. Weiss' body was later found in his Kingman, Arizona home. Graham confessed to the killing saying he had planned to go to Weiss' house to rob him.

We have jurisdiction pursuant to A.R.S. § 13–4031. We affirm the judgment of guilt and conviction, but modify the sentence.

Appellant presents these issues on appeal:

1. Should his confession have been suppressed from evidence because it was taken in violation of the dictates of *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)?
2. Was his confession involuntary?
3. Was it error for the trial judge to qualify Kingman Police Detective Mosby as an expert witness in the area of shooting deaths?
4. Was appellant improperly sentenced to death?

I

Appellant asserts his confession should have been suppressed because it was taken in violation of *Miranda, supra.*

Prior to being interviewed at the police station, appellant was given *Miranda* warnings and indicated he understood them. During his conversation with the detectives, appellant requested the tape recorder be turned off. He said, "I wish you'd turn that off for me cause this has nothing to do with this crime" and "if you'd shut that

thing off for a minute I could tell you something but I ain't, I ain't gonna say it on that." Officer Doherty refused to turn the recorder off, explaining that it was necessary to protect both of them. Graham continued with his confession. Graham now argues that when he said "I ain't gonna say it on that," he was exercising his privilege against self-incrimination and because questioning did not cease, his confession should have been suppressed. We disagree.

We find that appellant's statements did not constitute an exercise of his right to remain silent. When Graham saw Officer Doherty at the police station, he said, "I've been looking for you, I want to talk to you," and during the interview Graham talked freely about the events surrounding the crime. He was given *Miranda* warnings and indicated he understood them. The matter appellant wanted to discuss off the record was, he said, unrelated to the crime under investigation and when the detective explained that the tape recorder would have to be left on, Graham continued with his confession. If he had intended to assert his right to remain silent, he could simply have declined to talk further. There was no violation of the dictates of *Miranda, supra,* and therefore no error in admitting the confession.

## II

Appellant argues his conviction should be overturned because his confession was not voluntarily given.

■ The state must show by a preponderance of the evidence that a confession was freely and voluntarily made. The trial court must look to the totality of the circumstances in evaluating the voluntariness of a confession and absent clear and manifest error, the trial court's ruling will not be overturned on appeal. *State v. Dalglish,* 131 Ariz. 133, 639 P.2d 323 (1982).

■ In examining the circumstances surrounding Graham's confession, we find that on being brought to the police station, Graham said, "I've been looking for you and I want to talk about it." Graham apparently was not tired, hungry or intoxicated. He was given *Miranda* warnings prior to the interview with Lieutenant Doherty and Detective Mosby at the police station. He talked freely about the events surrounding the crime. There is no evidence of threats or promises made by police to Graham; in fact, Graham was allowed to telephone his mother in Ohio, and when, at one point, he asked that Detective Mosby leave the interview, Detective Mosby left the room. Graham alleges that Lieutenant Doherty's refusal to turn off the tape recorder during the interview constituted a coercive technique by which his will was overborne. We have examined this challenge in our discussion of the previous issue and determined there was nothing improper in the refusal to turn off the tape recorder.

Appellant asserts that the surroundings of the detective's office contributed to the involuntariness of his confession. While it may be unfamiliar and threatening in a small office with two police officers, we cannot say that every confession made at the police station is involuntary. Graham was told, as prescribed by *Miranda, supra,* of his right to remain silent and have an attorney present. The purpose of these warnings is to help dispel any coercive atmosphere associated with being in police custody. Appellant did not present any evidence of coerciveness at the suppression hearing. The trial judge's finding that the confession was voluntary was based upon substantial evidence and is not clearly erroneous. We affirm the trial court's ruling that the confession was voluntary.

## III

Appellant contends he was prejudiced because the trial judge allowed Kingman Police Detective Mosby to testify about his conclusions made from observations of the murder scene. Detective Mosby testified that he had observed rigor mortis in the victim's body as well as blood and brain tissue. He testified as to his conclusions about how the victim died and how long he had been dead. Appellant says Mosby was

not qualified to offer his opinion in these areas since he did not have medical or forensic training.

17A A.R.S. Rules of Evidence, rule 702, provides "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

■ Competence to testify as an expert is a matter largely within the trial court's discretion and a clear abuse of that discretion must be proved to warrant reversal. *State v. Passarelli,* 130 Ariz. 360, 636 P.2d 138 (1981).

■ "An expert witness is one who possesses skill and knowledge superior to that of men in general." *State v. Watson,* 114 Ariz. 1, 12, 559 P.2d 121, 132 (1976) *cert. denied,* 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977). Detective Mosby had been a law enforcement officer for nearly four years and had specialized training in homicide investigation. This training included observation of autopsies and instruction regarding gunshot wounds. Detective Mosby had investigated approximately 20 shooting deaths and 40 to 50 non-fatal shooting incidents. The trial judge did not abuse his discretion in finding Detective Mosby qualified as an expert.

### IV

■ Appellant asserts he was improperly sentenced to death. We agree. We are required to independently review the record and determine whether we believe that the death penalty should be imposed. *State v. Watson,* 129 Ariz. 60, 628 P.2d 943 (1981).

■ Arizona Revised Statutes §§ 13–703 (F) and (G) set forth aggravating and mitigating circumstances to be considered in determining whether to impose a sentence of life imprisonment or death. Subsection (E) requires imposition of the death penalty where there are one or more aggravating circumstances and no mitigating circumstances sufficiently substantial to call for leniency. The sentencing judge found two aggravating and no mitigating circumstances, and thus was required to impose the sentence of death. Our independent review leads us to a different result.

■ We do not find that the murder was committed in an especially cruel, heinous or depraved manner. Cruelty involves the pain and distress visited upon the victim and heinous and depraved go to the mental state and attitude of the perpetrator as reflected in his words and actions. *State v. Bishop,* 127 Ariz. 531, 534, 622 P.2d 478, 481 (1981). Weiss was shot once in the head and once in the chest. The medical examiner testified that in his opinion Weiss was rendered unconscious immediately, died within five minutes and did not suffer. Thus, the element of cruelty is not present here.

In looking at the appellant's state of mind, we find no convincing evidence that it was heinous or depraved at the time of the crime. The only evidence presented was testimony by Frank Hausen and Edward Latham that Graham had smiled as he told them the victim "squealed like a rabbit" when he was shot. Graham denies making that statement. Even assuming he did make the statement, we are not convinced this shows he relished the crime. The evidence, including the presentence report, psychiatrists' reports and appellant's own testimony show that appellant was an extremely immature person who was easily influenced by others, in this case particularly by 16-year-old Frank Hausen. Graham testified that he said and did many things because "Frankie" told him to. He also said he often didn't remember things he had said or done and Frank would tell him about his past behavior. Whatever statements Graham may have made about the killing are more likely attributable to his immaturity, nervousness and need to impress his peers than to a hardened attitude towards the death of another.

■ We do find that the crime was committed in the expectation of receipt of something of pecuniary value. For this aggravating circumstance to be present, the murder must have been committed for a "financial motivation." *State v. Clark,* 126

Ariz. 428, 616 P.2d 888 (1980). In Graham's confession, he stated his objective had been to steal Weiss' money. Also, Frank Hausen testified at the trial that Graham had said he planned to rob Weiss and after the crime described how he had done so. The circumstances of this case clearly establish the existence of this factor.

In mitigation appellant argues that his age, 21 years, should preclude the imposition of the death penalty. While young age is a mitigating factor, *see State v. Valencia,* 132 Ariz. 248, 645 P.2d 239 (1982), we give it little weight here.

Second, appellant argues his lack of prior convictions as a mitigating circumstance. We find that while appellant does have a record of juvenile offenses, he has no other convictions as an adult and this constitutes a mitigating circumstance. *State v. Knapp,* 125 Ariz. 503, 611 P.2d 90 (1979).

Third, the appellant asserts and we find the existence of mitigating factor A.R.S. § 13–703(G)(1): "The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution."

This finding is based in part upon the psychiatric reports and testimony of Eugene R. Almer, M.D., and Michael Cleary, M.D. Dr. Almer stated it was his opinion that at the time of the offense, Valium intoxication impaired the appellant's reasoning, ability to be rational and ability to exercise his usual judgment. While Dr. Cleary did not share this opinion, he did acknowledge with Dr. Almer that Graham had a long history of drug use and abuse as well as neurological problems and brain damage.

The presentence report further supports our finding of the mitigating circumstance of impaired capacity. The report states that at age seven the appellant was taken to professionals in the mental health field and put on drugs, thus beginning drug usage which continued to the present. The report further says:

"Unlike many other defendants who appear before the Court guilty of crimes related to drug abuse, the etiology of the defendant's drug abuse does not appear to be entirely of his own making. By legal and professional sanction the use of drugs has been an intimate part of the defendant's life from an early age."

The report notes that the appellant's prior record reveals no tendency toward the kind of violent crime for which he has been convicted. The major portion of his crimes were committed while the appellant was a juvenile and these crimes are all of a nature related to property offenses. The report describes Graham as a nonaggressive and passive individual who is easily influenced by others and gives the opinion that the character of the appellant and the manner of the crime do not merit the death penalty.

We concur with the probation officer's recommendation of clemency in this case and find that the mitigating circumstances found here outweigh the aggravating circumstance. We affirm the conviction and modify the sentence, changing it from death to life imprisonment without possibility of parole for 25 years.

We have examined the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.