764 P.2d 724

**The STATE of Arizona, Appellee,**

v.

**Calvin Richard STEVENS, Appellant.**

**No. CR-86-0325-AP.**

Supreme Court of Arizona,
En Banc.

Nov. 3, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and R. Wayne Ford, Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Edward F. McGee, Phoenix, for appellant.

## JURISDICTION

MICHAEL A. LACAGNINA, Court of Appeals Judge.

Calvin Richard Stevens was convicted of first-degree murder, attempted first-degree murder, armed robbery and possession of dangerous drugs. The court sentenced Stevens to death on the murder conviction, imposed aggravated, consecutive prison terms on the attempted murder and armed robbery convictions and a presumptive term on the drug conviction. Stevens appeals from these convictions and sentences. This court has jurisdiction pursuant to A.R.S. § 13-4031.

## ISSUES

Stevens raises the following issues on appeal:

1. Was Stevens' cellmate a police agent who solicited information from Stevens in

violation of his fifth or sixth amendment rights?

2. Did the trial court abuse its discretion in denying Stevens' motion for mistrial based upon a) the jury's consideration of certain photographs which were not admitted into evidence, b) the prosecutor's cross-examination concerning Stevens' statements to his cellmate, and c) the prosecutor's questions to Stevens about his defense strategy based upon Rule 11 competency grounds?

3. Did the trial court commit reversible error in its consideration of the victim impact statements in imposing the death penalty?

4. Did the trial court properly impose the death penalty?

5. Is the Arizona capital punishment statute unconstitutional?

## FACTS

On Tuesday, February 12, 1985, at approximately 10:30 p.m., Stevens telephoned Roy Craven, a co-worker and one of the victims, and told Craven to meet him at a Circle K convenience store. Craven had spoken to Stevens the day before about purchasing some marijuana. Craven and Steven Nash, the other victim, drove to the Circle K and bought some beer which they drank in Craven's pickup truck while waiting for Stevens. Stevens arrived about midnight and, after apparently turning around to urinate beside Craven's pickup, drew a gun and pointed it at Craven's head. He told both of the victims to put their hands on the dashboard, then ordered them to empty their pockets and hand him the contents. Craven showed Stevens his empty pockets and saw Nash empty his pockets and hand something to Stevens. Craven then heard a "boom" and fell to the side of the steering wheel.

When he got back up, Craven saw Stevens driving away in a tan Toyota pickup. He saw that Nash was spitting blood and bleeding. Craven went into the Circle K and told a customer he needed help, that his friend had been shot. They went outside, the customer saw Stevens driving down the road, and they both pulled Nash out of the truck and placed him on the ground. The customer ran into the Circle K and asked the clerk to call for police and paramedic assistance, then suggested that Craven get rid of the beer. When the police arrived, Craven told them what had occurred and described Stevens and the vehicle he was driving. The officer drove Craven to where Stevens had been arrested, and Craven identified Stevens as the assailant. Nash later died of his gunshot wounds.

Stevens had a gun and a large amount of cash tucked under his tee shirt when he was stopped. He also had in his pants pocket a brown vial which contained a white powdery substance later determined to be methamphetamine. He offered all of these items to the police.

On March 1, 1985, Detective Jones visited the Maricopa County Jail where Robert Markham, Stevens' cellmate, told Detective Jones that he had information concerning the murder and was willing to testify in court against Stevens. On March 18, 1985, after consulting with the county attorney, Detective Jones returned with Detective Baker to interview Markham. The police took a taped statement from Markham, who testified at trial over Stevens' objections that Markham's testimony was involuntary and inadmissible because Markham had acted in the capacity of a police agent in obtaining information from Stevens.

Stevens was convicted on all counts and, following a presentence hearing, the trial court found that the murder had been committed in expectation of the receipt of something of pecuniary value. A.R.S. § 13–703(F)(5). The court found in mitigation that Stevens' capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law had been impaired. A.R.S. § 13–703(G)(1). The court concluded that the mitigating factor was not sufficiently substantial to call for leniency and sentenced Stevens to death.

## ROBERT MARKHAM WAS NOT AN AGENT OF THE POLICE

Robert Markham was booked into the county jail on February 10, 1985. Ste-

vens was booked on February 13 and was later moved into the same jail unit as Markham. At some point, Stevens made incriminating statements to Markham about the murder. When that occurred, Markham telephoned his girlfriend who then contacted the police. On March 1, Detective Jones met with Markham at the jail, and Markham told him he had information concerning a confession made by Stevens. During this first conversation with the detective, Markham also said he wanted to be released from jail in order to return to Texas and clear up some pending charges. He also implied that he wanted this in exchange for the information. The detectives testified that they told Markham they could not make him any promises and would first have to speak with the county attorney concerning his request. On March 18, after discussing the case with the county attorney, Detective Jones returned to the jail with Detective Baker and took a tape-recorded statement from Markham. Markham testified that all his conversations with Stevens about the facts of the murder had taken place before the first interview with Detective Jones. In addition, there is no evidence in the record that Detective Jones asked Markham during the first interview to elicit further information from Stevens. Nor is there evidence that Detective Jones gave Markham any information about the case at that time.

Stevens argues that after March 1, 1985, Markham was a "de facto police agent" and that any questioning or listening by Markham after this date was a violation of Stevens' sixth amendment right to counsel, citing *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), and *State v. Smith*, 107 Ariz. 100, 482 P.2d 863 (1971). We disagree. Stevens failed to establish the existence of an agency relationship between Markham and the police. The cited cases are therefore inapplicable, and no further inquiry as to whether the state actively sought information from Markham about the murder was required. In addition, the jury was still entitled to disregard Markham's testimony as lacking credibility based upon either his criminal background, his reputation for lack of

truthfulness, or the favorable pleas he entered following his agreement to testify.

## EVIDENTIARY RULINGS

### A. *Unadmitted Photographs Shown to the Jury Constituted Harmless Error.*

Stevens argues that because Exhibits 6 and 7, which were never admitted into evidence, were inadvertently given to the jury, his motion for mistrial based upon the jury's consideration of this evidence should have been granted. The exhibits were two photographs of the scene of the shooting taken after the body had been removed showing the cardboard upon which the paramedics laid the victim, a pool of blood, some paramedic items and the victim's bloody tee shirt. We have viewed the exhibits and have compared them to Exhibit 5, a photograph of the same scene shot from a greater distance which was admitted into evidence, and we find that the jury's consideration of this extrinsic evidence could not have contributed to the verdict beyond a reasonable doubt. *State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (1982). The trial court acted within its discretion in denying Stevens' motion. *McLaughlin v. Fahringer*, 150 Ariz. 274, 723 P.2d 92 (1986).

### B. *Prosecutor's Cross-Examination.*

Stevens argues that the prosecutor cross-examined him concerning a statement that the trial court had previously ruled inadmissible. When the police told Stevens he was being arrested for murder, he responded, "What did I do, kill a dog?" Stevens later recounted the statement to Markham. Following the state's voluntariness hearing, the trial court ruled that although the arresting officers' testimony concerning the statement was inadmissible, Markham's testimony would be admissible, including his testimony concerning Stevens' statement to the police. Stevens failed to object when Markham testified.

Stevens further argues that the prosecutor improperly cross-examined him, attempting to elicit an admission that he had

filed a Rule 11 motion. The objection was sustained. Stevens then moved for a mistrial because the question was improper and prejudicial. The motion was denied. We fail to see any prejudice from asking the question. The jury already knew that Markham had suggested and/or Stevens had told Markham that he was going to use Rule 11 as a defense strategy to "beat the charge." The jury also knew from the testimony of both persons that a Rule 11 defense involved something similar to a plea of temporary insanity. The state's attempt to determine whether in fact Stevens had employed this defense was not prejudicial. In any event, Stevens' objection to the question was sustained. Therefore, the error, if any, was harmless.

## DEATH SENTENCE ISSUES

### A. *The Court's Consideration of Victim Impact Statements.*

■ Stevens argues first that the trial court improperly considered victim impact statements in its imposition of the death penalty. Prior to the imposition of sentence, the trial court examined the record for any mitigating factors pursuant to A.R.S. § 13–703(G) and stated as follows:

> The court has considered other proffered mitigation with reason (sic) to the state's pretrial plea offer, the defendant's prior record, and the question of whether the acts of the defendant were intentional, and the statements of interested parties. The court finds no mitigation under any of these factors.

Stevens argues that the trial court considered victim impact evidence, particularly as it applied to the death penalty determination, and that such consideration was contrary to the Supreme Court's decision in *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). We disagree.

This court has recently held, in applying *Booth v. Maryland* to a death sentence case where victim impact statements were received, that "[a]bsent proof to the contrary, the trial judge in a capital case must be presumed to be able to focus on the relevant sentencing factors and to set aside

the irrelevant, the inflammatory, and the emotional factors." *State v. Beaty,* 158 Ariz. 232, 244, 762 P.2d 519, 531 (1988). Victim statements are not listed as one of the permissible aggravating circumstances under A.R.S. § 13–703(F), and there is nothing in the record before us which rebuts the presumption that the trial court considered only the relevant sentencing factors in deciding to impose the death sentence. In addition, the victim impact statements were properly submitted and considered in this case in connection with the other sentencings.

### B. *Aggravation/Mitigation.*

In every capital sentencing case, we must conduct an independent review of the facts that establish the presence or absence of aggravating and mitigating circumstances and "determine if the latter outweigh the former" in order to determine whether the death penalty was properly imposed. *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976).

In this case the trial court found one aggravating circumstance: that Stevens had committed the offense as consideration for the receipt, or in expectation of the receipt of something of pecuniary value. The court also found one mitigating factor: that Stevens' capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law had been significantly impaired but not so impaired as to constitute a defense to prosecution. After taking into account both the aggravating and mitigating circumstances, the court found that there was no mitigating circumstance sufficiently substantial to call for leniency and imposed the death penalty. Stevens does not argue that the state failed to prove the aggravating factor beyond a reasonable doubt. We have held that if receipt of money was the motive for the murder, the aggravating factor has been established. *State v. LaGrand,* 152 Ariz. 483, 733 P.2d 1066, *cert. denied,* — U.S. —, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987).

In mitigation, Stevens argued that his capacity to appreciate the wrongfulness of

his conduct had been impaired by his long-term use of drugs and alcohol. In support, he offered the written reports of two psychiatrists. Dr. Donald F. Tatro, a clinical psychologist, interviewed Stevens in jail for three and one-half hours. Stevens admitted during the interview that he was extremely intoxicated at the time of the shooting. He had been drinking for several hours, probably having consumed more than 12 cans of beer, and had also been injecting himself with "crystal meth" all day long. He remembers injecting himself for the last time 45 minutes before the shooting. He stated to Dr. Tatro that the combination of alcohol and amphetamine often made him feel somewhat paranoid, as though people were talking about him or were mad at him. He was, as a result, slightly suspicious when Craven asked him if he could bring Nash along for their meeting. He also admitted having a hard time accepting the fact that he had committed the offense. He said he did not hear the shots as the gun was going off and did not purposely place them at any particular individual. He stated to Dr. Tatro that it all happened in an instant when things became life threatening. "It was either me or them. I didn't plan it to turn out that way." His history of drug and alcohol abuse dated back to his early teen years. Dr. Tatro concluded that "the weight of the present findings suggest that Mr. Stevens' actions were the result of his heavy use of alcohol and drugs preceding his meeting with the victims and a well-developed habit of acting out on socially unacceptable impulses while under the influence of such intoxicants." Dr. Tatro diagnosed Stevens as being alcohol and amphetamine dependent and as having a passive-aggressive personality disorder.

The second consultant, Dr. Stephen Mychajliw, a psychiatrist, also interviewed Stevens in jail. Dr. Mychajliw concluded after interviewing Stevens as follows: "Had the defendant been free of any mental disorder, the alleged offenses would probably not have been committed. He apparently had enough capacity to appreciate right from wrong, but his ability to conform his behavior [to] the requirements of the law were impaired at that time."

Dr. Tatro's report also indicated that there is nothing about Stevens' history or personality which would reveal a tendency toward the kind of violent crime for which he was convicted in this case. Dr. Tatro describes Stevens as "soft spoken, pleasant, courteous and cooperative. There was little about his manner or appearance to suggest that he would be capable of the kind of violence with which he is charged." Dr. Tatro describes Stevens as too passive to intentionally hurt anyone that he cares about. "When he acts out against others, it is almost always when he is under the influence of some 'irresistible' external influence such as alcohol, drugs or persuasion of friends." The trial court found based upon the above testimony that the mitigating circumstance did exist but it was not sufficiently substantial to call for leniency.

## C. *Proportionality.*

Our further obligation on appeal in a capital murder case is to determine whether the imposition of the death penalty violated the eighth amendment prohibition against cruel and unusual punishment. That is, was the death sentence excessive or disproportionate to the penalty imposed in similar cases, considering both the offense committed and the character of the accused? *State v. Michael Kent Poland,* 144 Ariz. 412, 416, 698 P.2d 207, 211 (1985), *aff'd,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). In this case, the determination involves weighing the aggravating factor of pecuniary gain against Stevens' claim of diminished capacity as a mitigating factor.

We disagree with the trial court's finding that although a mitigating circumstance had been established, it was not sufficiently substantial to call for leniency. Stevens testified that he had been drinking heavily and ingesting drugs prior to the shooting. The almost empty vial of methamphetamine and the empty beer cans corroborate his statement. We vacated a death sentence in a similar case where the trial court

had found both the aggravating and mitigating circumstances that are present in this case. In *State v. Graham*, 135 Ariz. 209, 660 P.2d 460 (1983), the defendant had been drinking the night of the murder and talking with a 16–year–old about the possibility of robbing the victim. The teenager went to his house, got a rifle and cartridges, and gave them to Graham, who then went to the victim's residence, knocked a few times at the door and was about to leave when the lights came on and the front door opened. Graham turned and fired twice in rapid succession, killing the victim. Graham confessed to the murder stating that he had planned to go to the victim's house to rob him. This court agreed with the trial court's finding that the crime had been committed in the expectation of receipt of something of pecuniary value. However, the court also found the existence of impaired capacity on the part of Graham, as supported by psychological reports.

In addition, Graham, like Stevens, had no prior convictions, and there was nothing in his record which revealed a tendency toward the kind of violent crime he committed. The psychological reports described Graham, as did the reports in this case describe Stevens, as nonaggressive and passive and easily influenced by others. The report in *State v. Graham* concluded that the character of the accused and the manner of the crime did not merit the death penalty. We agreed with that opinion and find the facts sufficiently similar in the present case to call for the same opinion.

█ We note also that we vacated a death sentence in another case involving a drug rip off which resulted in the death of the victim. In *State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979), during a drug transaction, the defendant Brookover went to the bedroom, pulled out a gun and told one of the participants that there would be no money, that he was going to take the marijuana. He then went to the living room and shot the victim once in the back. The victim fell to the floor moaning and asked the defendant what he had done.

Graham said, "Don't worry, it will be over soon," and shot him once more in the back. We held in that case that defendant's aggravating circumstance of a prior conviction punishable by life imprisonment was outweighed by the mitigating circumstance of his diminished capacity. This finding was based on psychiatric evidence that the apparent existence of a neurological lesion caused a tendency in 50% of individuals with such a lesion to lead them in the direction of antisocial behavior. We concluded in *Brookover* that the defendant's mental condition was a major and contributing cause of his conduct. We come to the same conclusion with regard to Stevens' behavior at the time of the offense. Based upon the medical testimony and Stevens' own testimony, we conclude that Stevens' condition at the time of the offense was a major and contributing cause of his conduct and was sufficiently substantial to outweigh the aggravating factor of pecuniary gain.

In light of our decision vacating Stevens' death sentence, we need not address his arguments concerning the constitutionality of the death penalty statute. We vacate the death sentence and resentence Stevens to life imprisonment without possibility of parole for twenty-five years. We further order the sentence for the attempted murder conviction to be served consecutive to this sentence. We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none. Therefore, the convictions and sentences are in all other respects affirmed.

Gordon, C.J., and Holohan and Moeller, JJ., concur.

FELDMAN, V.C.J., did not participate in this decision; pursuant to Ariz.Const. art. 6, § 3, MICHAEL A. LACAGNINA, J., Court of Appeals, Division Two, was designated to sit in his stead.

CAMERON, Justice, dissenting,

I regret that I must dissent. Our statutes provide that significant impairment of the defendant's capacity to appreciate the

wrongfulness of his conduct or conform his conduct to the requirements of the law is a mitigating circumstance. A.R.S. § 13–703(G)(1). We have previously held that drug or alcohol intoxication by itself is not a mitigating circumstance. *State v. Jordan,* 126 Ariz. 283, 290, 614 P.2d 825, 832, *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). Intoxication is a mitigating circumstance only if the defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired. *Id., see State v. Zaragoza,* 135 Ariz. 63, 70, 659 P.2d 22, 29, *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983); *State v. Britson,* 130 Ariz. 380, 388, 636 P.2d 628, 636 (1981); *State v. Smith,* 125 Ariz. 412, 417, 610 P.2d 46, 51 (1980).

We have also held that mental impairment, caused by voluntary intoxication or otherwise, is not an absolute bar to the imposition of the death penalty. *State v. Gretzler,* 135 Ariz. 42, 48, 659 P.2d 1, 7, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Neither is the death penalty precluded because the trial court found one mitigating factor and one aggravating factor. We are not required to consider each aggravating and mitigating factor to be of equal significance. *State v. Knapp,* 125 Ariz. 503, 504, 611 P.2d 90, 91 (1979). More is required than the existence of simply any mitigating factor to preclude the death penalty. *Id.* Instead, the mitigating and aggravating circumstances must be weighed against each other to determine whether the mitigating circumstances are sufficiently substantial to call for leniency. A.R.S. § 13–703(E).

I do not agree with the majority that the mitigating circumstance of mental impairment caused by voluntary drug and alcohol intoxication outweighs the aggravating circumstance. I find the cases cited by the majority to be distinguishable from the present case. In *State v. Graham,* 135 Ariz. 209, 660 P.2d 460 (1983), the defendant not only had a history of drug use and abuse, but he had neurological problems and brain damage as well. Moreover, de-

fendant's drug abuse problem was not totally self-inflicted. When defendant was seven years old, mental health specialists prescribed drugs to him. *Id.* at 213, 660 P.2d at 464. As the defendant's presentence report stated:

> Unlike many other defendants who appear before the Court guilty of crimes related to drug abuse, the etiology of the defendant's drug abuse does not appear to be entirely of his own making. By legal and professional sanction the use of drugs has been an intimate part of the defendant's life from an early age.

*Graham,* 135 Ariz. at 213, 660 P.2d at 464.

Unlike the defendant in *Graham,* Mr. Stevens did not have neurological problems or brain damage nor was his drug abuse created by anything but his own choice.

Similarly, in *State v. Brookover,* 124 Ariz. 38, 601 P.2d 1322 (1979), the defendant had a pre-existing neurological lesion. A psychiatrist testified that such a lesion would make it difficult for someone with it to undergo normal character development. The psychiatrist also testified that people with such lesions tend to have anti-social or asocial behavior. *Id.* at 41, 601 P.2d at 1325. Although the murder was committed during a drug deal, the court did not find that drugs impaired Brookover's capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law. Rather, the defendant's mental impairment was caused by his brain lesion. Accordingly, I find *Brookover* does not support the majority's ruling.

I am not convinced that the evidence presented is sufficient to support a finding that defendant's capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law was significantly impaired. However, even if I accept the psychiatrist's testimony that the drugs influenced defendant's behavior, I do not believe that this mitigating circumstance sufficiently outweighs the aggravating circumstance, and thus I believe the death penalty should be imposed in this case. I do this based not only upon the

reasoning of the trial court, but also upon review of the record anew in this court. *State v. Hensley,* 142 Ariz. 598, 603, 691 P.2d 689, 694 (1984) (in death penalty cases, the Supreme Court independently reviews the record to determine the presence or absence of aggravating and mitigating circumstances and the weight to be given to each); *State v. Graham,* 135 Ariz. 209, 212, 660 P.2d 460, 463 (1983).

I would affirm the trial court.