822 P.2d 465

**STATE of Arizona, Appellee,**

v.

**Bruno Arthur LOPEZ, Appellant.**

**No. 1 CA–CR 89–1013.**

Court of Appeals of Arizona,
Division 1, Department A.

July 2, 1991.
Redesignated as Opinion Sept. 17, 1991.
Review Denied Jan. 21, 1992.

Grant Woods, Atty. Gen. by Paul McMurdie, Chief Counsel, Crim. Div., and Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

## OPINION

CAMPBELL, Judge.*

Appellant Bruno Arthur Lopez (defendant) was indicted on six counts of sexual conduct with a minor under the age of 15, class 2 felonies and dangerous crimes against children in the first-degree under Ariz.Rev.Stat.Ann. § 13–604.01 (1989). The indictment charged various incidents involving a single male victim named Chris [1], then 12 years old, on two dates in May or June, 1987.

## FACTUAL BACKGROUND

We review the evidence in the light most favorable to sustaining the verdict. Chris met defendant in April, 1987, after Chris answered an advertisement for a job that allowed teenagers to make money selling candy door-to-door. When defendant came to Chris' home to take him on the sales route, Chris was on the telephone to his mother at work. Defendant almost immediately began to touch Chris in a sexual manner; [2] though Chris protested, he accompanied defendant on the candy sales route. Over the next two days, defendant told Chris about sexual acts performed with men and with a woman named Lydia.

---

* NOTE: The Honorable Colin F. Campbell, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.

1. To protect the privacy of minor victims and witnesses, we refer to them throughout by first names only. *See State v. Comer,* 165 Ariz. 413, 416 n. 1 799 P.2d 333, 336 n. 1 (App.1990).

2. This incident was not charged.

Defendant also promised Chris fellatio as a reward for good candy sales.

On the third day, defendant came to Chris's house to pick him up. He entered Chris's bedroom and sexually molested him. After Chris got dressed, defendant took him on his candy sale route.

On another occasion several days later, defendant came to Chris's home with sexual paraphernalia and pornographic magazines. Defendant anally assaulted Chris with the items he had brought; defendant also masturbated Chris, performed fellatio on him, and assaulted Chris anally. Defendant subsequently offered to provide Chris with a girl for intercourse if Chris would allow another man to perform fellatio on him.

The state presented the testimony of three other witnesses who had sexual contact with defendant. One witness, Andy, testified that he had met defendant ten years earlier, when he was 14. Defendant invited Andy into his apartment while he was on his paper route and promised him employment with an organization that placed teenagers in yard care jobs. Over the next four to six months, defendant had sexual relations with Andy. He performed fellatio on Andy, forced Andy to perform fellatio on him, and sodomized Andy. Defendant gave Andy marijuana and beer and, on two occasions, provided him with a woman for sex. The woman's name was Lydia. Defendant pled guilty to a criminal charge regarding his sexual activity with Andy and was imprisoned.

A second witness, David, testified that he met defendant in Tucson in 1987 when he was 16 and went to work selling candy door-to-door. While defendant was alone with David, he took him into the desert and told him a sexually explicit story. He then performed fellatio on David and placed David's hand on his penis so that David could masturbate him. He also promised to procure a woman from Phoenix with whom he and David could have sex.

The third witness, Alex, also met defendant in Tucson when Alex was selling can-

dy. He was 14. Defendant told Alex sexual stories and told him he would get a girl for him. While Alex was alone with defendant in his truck in November 1987, defendant grabbed Alex's penis. Immediately, Alex leapt from the truck, ran to a telephone and called police.

Tucson police investigated allegations made by Alex and David and subsequently arrested defendant in Phoenix. He was appointed a deputy Pima County public defender. While defendant was in custody in Tucson on March 21, 1988, he was interviewed by Phoenix police detective Emilio Soto, who was investigating the allegations made by Chris. Defendant received *Miranda* warnings and agreed to talk to the detective. He admitted having a sexual relationship with a 14-year-old boy named Andy. He denied making any sexual advances toward Alex. Regarding Chris, he said "nothing had happened to [Chris] that [Chris] didn't want." He also said that he had only had anal sex with two people and that Chris was not one of them.

Defendant was convicted of all counts and was sentenced to six consecutive presumptive sentences of 20 years imprisonment. He filed a timely notice of appeal, raising four issues:

1. Were his statements to detective Soto improperly admitted?

2. Did the court err in allowing evidence of other conduct to show a continuing emotional propensity toward aberrant sexual conduct?

3. Was the introduction of expert testimony improper?

4. Did the court erroneously restrict impeachment of David, a prosecution witness?

### Discussion
### ADMISSION OF DEFENDANT'S STATEMENT

1. *Fifth amendment violation* [3]

■ An accused in custody, "having expressed his desire to deal with the police

---

3. Defendant's "right to counsel" under the fifth amendment is a prophylactic rule designed to

safeguard the privilege against self-incrimination directly conferred by that amendment. *See*

only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him." *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). If the accused has invoked the right to counsel, statements are admissible only if the state shows that the defendant initiated further discussions with the police and knowingly and intelligently waived the right previously asserted. *Id.* at 485, 486 n. 9, 101 S.Ct. at 1885. Defendant contends that he invoked his right to counsel in this case when he told Detective Soto: "My attorney would shit bricks if he knew I was talking to you right now. He told me not to discuss this case with anyone."[4] Implicitly, he asserts that no subsequent waiver of the right to counsel occurred.

The Supreme Court has recognized that, "[o]n occasion, an accused's asserted request for counsel may be ambiguous or equivocal." *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). In *Smith,* the Supreme Court noted that courts have taken various paths when presented with a statement that may be viewed as equivocal. Some courts have held that all questioning must cease upon any request for or reference to counsel, however ambiguous. *E.g., People v. Superior Court,* 15 Cal.3d 729, 735–36, 125 Cal. Rptr. 798, 802–03, 542 P.2d 1390, 1394–1395 (1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976). Other courts have held that when an accused makes an equivocal statement that "arguably" can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to "clarify" the earlier statement and the accused's desires respecting counsel. *E.g., Thompson v. Wainwright,* 601 F.2d 768, 771–72 (5th Cir.1979); *State v. Moulds,* 105 Idaho 880, 888, 673 P.2d 1074, 1082 (App.1983). Still other courts have embraced a third approach, attempting to define a "threshold"

*Solem v. Stumes,* 465 U.S. 638, 644 n. 4, 104 S.Ct. 1338, 1342 n. 4, 79 L.Ed.2d 579 (1984). It is analyzed separately from the right to counsel conferred by the sixth amendment.

standard of clarity for such requests, and have held that requests falling below this threshold do not trigger the right to counsel. *E.g., People v. Krueger,* 82 Ill.2d 305, 311, 45 Ill.Dec. 186, 189, 412 N.E.2d 537, 540, (1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 390 (1981) ("[A]n assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity," but not "every reference to an attorney, no matter how vague, indecisive, or ambiguous, should constitute an invocation of the right to counsel").

In *State v. Staatz,* 159 Ariz. 411, 768 P.2d 143 (1988), the Arizona Supreme Court stated that Arizona employs the second, or "clarifying" approach. The court held that the statement "Maybe I should be talking to a lawyer" was an ambiguous request that required police to either cease questioning or attempt to clarify the defendant's request. *Id.* at 414, 768 P.2d at 146. The supreme court cited *State v. Inman,* 151 Ariz. 413, 728 P.2d 283 (App.1986), in which we held that the defendant's statement, "When can I get a lawyer?" was at least an ambiguous request that required clarification before police could proceed with questioning. 151 Ariz. at 416, 728 P.2d at 286. *See also State v. Flower,* 161 Ariz. 283, 778 P.2d 1179 (1989) (defendant's silence following *Miranda* warning created ambiguity which permitted only questions to clarify his intent); *State v. Finehout,* 136 Ariz. 226, 665 P.2d 570 (1983) ("I ain't going to say any more," if an ambiguous assertion of right to remain silent, permitted only clarifying questions).

Other Arizona cases, however, appear to have embraced the "threshold" approach in analyzing requests for counsel, and have found that various statements mentioning an attorney fail to qualify even as "equivocal." In *State v. Linden,* 136 Ariz. 129, 664 P.2d 673 (App.1983), we considered whether a suspect's inquiry of police as to "who a good attorney would be" was suffi-

4. At the voluntariness hearing, the detective recalled defendant's statement as "he shouldn't be talking to me and his attorney was out of town and that his attorney was going to shit bricks when he got back and learned that he had been talking to me."

cient to invoke his right to counsel. We analyzed the statement in the context in which it was made. We noted that the suspect, a former police officer, had been given *Miranda* warnings on three occasions and had testified that he understood them. Moreover, he had not refused to talk to investigating officers and, in fact, had requested the presence of a prosecutor so that he, and not an attorney, could attempt to negotiate a "deal." We concluded: "The record shows that the defendant clearly understood his right to counsel and did not make a specific request for assistance of counsel." *Id.* 136 Ariz. at 134, 664 P.2d at 678. Subsequently, the supreme court has cited *Linden* in holding that references by suspects to counsel did not amount to an invocation of that right. *See State v. Prince*, 160 Ariz. 268, 272, 772 P.2d 1121, 1125 (1989) ("Do you think I should get a lawyer?"); *State v. Moorman*, 154 Ariz. 578, 584–85, 744 P.2d 679, 685–86 (1987) ("I wonder if I need an attorney. I will leave it up to you guys if I need an attorney."); *see also State v. Graham*, 135 Ariz. 209, 660 P.2d 460 (1983) (in light of the circumstances surrounding statement, defendant's request to have tape recorder turned off during interview was not an invocation of right to remain silent).

In *State v. Mada*, 168 Ariz 289, 812 P.2d 1107 (App.1991), Division Two of this court addressed the precise issue raised here. The defendant claimed that his post-arrest statements were inadmissible because he told the interrogating officer "my attorney told me not to talk to you guys." *Id.* at 290, 812 P.2d at 1108. The officer then asked questions of the defendant that were designed to clarify his wishes. The defendant agreed to speak further and made incriminating statements.

Noting the novelty of the factual question in Arizona, Division Two relied upon *Prince* and *Moorman* and held that the defendant's statement did not invoke his right to counsel. We agree with this result and find it applicable to the case before us. The holding in *Mada* is supported by cases in other jurisdictions which have considered this factual scenario. For instance, in *State v. Bledsoe*, 33 Wash.App. 720, 658

P.2d 674 (1983), the court held that a similar statement was not an invocation of the right to counsel by defendant, on the ground that he "did not ask for his attorney. Rather, he merely told [the detective] what his attorney had advised." 33 Wash. App. at 723, 658 P.2d at 676. Similarly, in *Delap v. Dugger*, 890 F.2d 285 (11th Cir. 1989), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990), a federal court of appeals rejected the contention that a defendant had invoked his right to counsel by telling the police he had a lawyer on other charges. The court stated:

> Delap never requested a lawyer, even tentatively—he merely informed the interrogating officers that he had a lawyer for an unrelated charge. The record indicates that Delap did not intend his discussion of his representation of counsel in the misdemeanor proceeding to be a request for an attorney.

*Id.* at 293; *see also State v. Curtis*, 552 A.2d 530, 532 (Me.1988) (statement by defendant that he had already spoken to an attorney was not a request for counsel).

We have found only one case suggesting that a remark like defendant's should be considered an assertion of the right to counsel. In *Sechrest v. State*, 101 Nev. 360, 363–66, 705 P.2d 626, 629–30 (1985), the court held that a police officer properly asked for clarification after a suspect stated that he had spoken to his attorney and had been advised to "keep his mouth shut." The court held that the right to counsel had attached, but was waived when the suspect made further statements. *Id.* The suspect in *Sechrest* had spoken to his attorney regarding the charges about which he was questioned. In this case, by contrast, defendant had not spoken to an attorney about charges arising out of the incidents with Chris; consequently, defendant's right to counsel had not yet attached.

Our conclusion that defendant's reference to his lawyer's advice was not an invocation of his right to counsel is also supported when we examine the context in which it was made. *See Linden*, 136 Ariz. 129, 664 P.2d 673. Defendant's remark about his attorney was made after he re-

ceived *Miranda* warnings and after he had spoken with Detective Soto for an unspecified period of time. As in *Linden,* defendant never indicated to the detective that he wished to discontinue the interview. At the pre-trial hearing, in fact, defendant acknowledged that his statements were made voluntarily. In light of all these circumstances, we hold that defendant's statement mentioning his attorney was not an invocation of his right to counsel. The statements he made to Detective Soto were properly admitted at trial.

### 2. *Sixth amendment violation*

■ In his brief, defendant alludes to a violation of his sixth amendment right to counsel. He argues that the fact that the detective interrogated him even though he was represented by counsel amounts to a violation distinct from the alleged failure discussed, *supra,* to honor his invocation of the right to counsel. This argument was not raised in the trial court; accordingly, it is waived on appeal. *State v. Tison,* 129 Ariz. 526, 535, 633 P.2d 335, 344 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982) (constitutional claims, including violation of sixth amendment right to counsel, waived by failing to make argument below; "The preclusion of issues applies to constitutional objections as well as statutory objections because an adherence to procedural rules serves a legitimate state interest in the efficient and timely presentation of issues").

### OTHER CRIMES EVIDENCE

Defendant contends that the trial court erred in permitting the state to introduce evidence of his sexual conduct with boys other than the victim. The court permitted evidence of these incidents at trial to show that defendant had a continuing emotional propensity for sexual aberration.

■ Evidence of previous acts of sexual misconduct is generally not admissible in a prosecution for a sex offense. *See* Ariz. R.Evid. 404(b); *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976). Such evidence is, however, admissible to show that defendant has a continu-

ing emotional propensity for sexual aberration, if the acts are similar and occurred closely in time. *State v. McFarlin,* 110 Ariz. 225, 228, 517 P.2d 87, 90 (1973). Defendant contends that the incidents the other witnesses described failed to meet the requirement that such conduct be "similar" to that with which he was charged. *See McFarlin,* 110 Ariz. at 228, 517 P.2d at 90.

■ An exact replication between the charged acts and the uncharged acts is not required to permit the admission of uncharged acts under the emotional propensity exception. *State v. Roscoe,* 145 Ariz. 212, 217, 700 P.2d 1312, 1317 (1984), *cert. denied,* 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 525 (1985); *State v. Weatherbee,* 158 Ariz. 303, 304, 762 P.2d 590, 591 (App. 1988). Rather, the exception requires only that the uncharged acts be similar to the charged acts. In this case, the similarities between the uncharged and the charged acts were numerous: in each of the uncharged acts, defendant made sexual advances to an adolescent male between the ages of 14 and 16; in each of the cases, defendant made promises to procure a woman or girl to have sex with the boy; in each case the victim had been offered or had actually obtained employment with defendant. Finally, two of the other boys suffered a sexual assault while under defendant's supervision. These similarities were sufficient to allow the evidence at trial.

■ Defendant contends that the incidents described by two of the boys were to some extent "consensual," making them dissimilar from the assaults on Chris, which defendant describes as "extended sexual acts culminating in repeated and forcible sodomy." Even if we were to agree that these incidents were not similar to the crimes charged, the state was permitted to introduce them at trial by presenting expert testimony that the acts were aberrational and showed a continuing emotional propensity to commit the crime charged. *State v. Treadaway,* 116 Ariz. 163, 568 P.2d 1061 (1977). The trial court found this evidentiary predicate satisfied

by the testimony of Dr. Jeffrey Harrison, a psychologist, at a pre-trial hearing. The introduction of this evidence was not erroneous.

■ Defendant also asserts that the application of the emotional propensity exception to Rule 404(b) offends the equal protection provisions of the United States and Arizona Constitutions. U.S. Const., Amend. XIV; Ariz. Const., Art. 2, § 13. He argues that defendants charged with sexual offenses are placed at a disadvantage because evidence of other similar crimes is admitted in their trials, but not in trials of those accused of other types of crime. No authority is cited for this novel proposition.

Defendant has identified no fundamental right that has been denied to him; neither does he allege that this conduct constitutes denial of equal protection to a suspect class. Accordingly, we analyze his equal protection challenge solely by determining whether there is a rational basis for the rule applied to this type of case. *State v. Loughran*, 143 Ariz. 345, 348–49, 693 P.2d 1000, 1003–04 (App.1985). We find such a basis amply expressed in *State v. McFarlin*, 110 Ariz. 225, 517 P.2d 87 (1973), in which our supreme court held that the usually secret nature of the crime and the resultant problem of proof by the prosecution justified an additional, carefully circumscribed exception to the general prohibition of other crime evidence at trial. 110 Ariz. at 228, 517 P.2d at 90. .As the state points out, by asking us to find this reasoning irrational, defendant is simply inviting this court to overrule the supreme court. We are not empowered to do so, even if we were so inclined. *State v. McShine*, 131 Ariz. 485, 487, 642 P.2d 482, 484 (App. 1982).

### EXPERT TESTIMONY

■ Defendant argues that Dr. Harrison's trial testimony offended limitations on expert testimony established by *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986); *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986); and *State v. Tucker*, 165 Ariz. 340,

798 P.2d 1349 (App.1990). In *Tucker*, we stated:

> [A]n expert witness may testify about the general characteristics and behavior of sex offenders and victims if the information imparted is not within the knowledge of most lay persons. The expert may neither quantify nor express an opinion about the veracity of a particular witness or type of witness. The expert may not explain that, based upon the characteristics and behavior he has described, a person's conduct is consistent with the crime having occurred.

165 Ariz. at 346, 798 P.2d at 1355. The record shows that the opinions offered by Dr. Harrison were properly admitted; they were directed to "general characteristics of sex offenders and victims," not to the facts of the case. Indeed, at trial defense counsel contended that the court should preclude Dr. Harrison's testimony as irrelevant because it was *not* related to the specific charges against defendant. This was precisely the type of testimony we held *inadmissible* in *Tucker*. The objections were properly overruled.

■ Defendant also contends that the state improperly cross-examined his expert witness, psychologist Dr. Ronald Teed. Dr. Teed testified on direct examination that defendant was sexually seductive but not violent. To the extent defense counsel objected at all to the state's cross-examination, the objections were to insufficient foundation and to the form of the questions asked. Defense counsel never objected to the cross-examination as beyond the scope of permissible expert testimony. Absent fundamental error, not present here, the issue is waived. *State v. Olsen*, 157 Ariz. 603, 610, 760 P.2d 603, 610 (App.1988).

### IMPEACHMENT OF PROSECUTION WITNESS

■ Defendant contends that the court erred in two respects in prohibiting impeachment of David, one of the witnesses who testified regarding his prior misconduct. First, he asserts that the court improperly precluded his impeachment of David with the fact of his prior juvenile adjudication for child molestation. Rule 609(d), Arizona Rules of Evidence, states:

*Evidence of juvenile adjudication is generally not admissible under this rule.* The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

(emphasis added). Before granting the state's motion *in limine*, the court heard testimony from David himself, who revealed that the adjudication was based on the fact he had touched his sister's breast three years earlier, when he was 13 or 14. The trial judge did not clearly abuse his discretion in precluding impeachment of the witness on this basis. *See State v. Ruelas*, 165 Ariz. 326, 331–32, 798 P.2d 1335, 1340–41 (App.), *review granted on other grounds*, 165 Ariz. 298, 798 P.2d 1307 (1990).

 Second, defendant contends that the trial court erred by precluding him from asking a defense witness, Robert Whiteman, whether David ever reported seeing space "aliens on planet earth." During cross examination, a party may, in the court's discretion, ask a witness about a specific incident that is probative of that witness' credibility. Ariz.R.Evid. 608(b). In this case, however, David was not confronted with the statement about aliens during his testimony. The incident could not otherwise be proven through extrinsic evidence. *Id.*

## CONCLUSION

Pursuant to Ariz.Rev.Stat.Ann. § 13–4035 (1989), we have reviewed the record for fundamental error and have found none. Defendant's convictions and sentences are affirmed.

JACOBSON, P.J., and GERBER, J., concur.