[No. 10716-0-I.   Division One.   January 17, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE WILLIE BLEDSOE, *Appellant.*

---

*George Willie Bledsoe,* pro se, and *Elizabeth Selleck* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Dennis Nollette, Deputy,* for respondent.

SWANSON, J.—George W. Bledsoe was convicted in a trial before a jury of first degree murder while armed with a deadly weapon. He appeals alleging (1) the trial court erred in admitting evidence arising out of his conversation with a police officer and (2) the trial court's jury instructions were improper. We affirm.

At trial, the evidence revealed that early on the morning of February 20, 1981, Bledsoe told two persons he had just killed a woman. On February 22, three girls found the body of Vanessa Kelly. Kelly had died from a .38 caliber revolver shot 2 or 3 days before. Kelly and Bledsoe had been acquainted.

Police arrested Bledsoe on April 1, 1981. That afternoon Detective Peterson of the King County Police Department met with the defendant. The detective informed Bledsoe of his *Miranda* rights. Bledsoe signed forms waiving and acknowledging receipt of his *Miranda* rights.

On April 9, pursuant to a properly authorized search warrant, police searched Bledsoe's house. They found a .38 caliber revolver subsequent tests revealed had fired the bullet that killed Kelly. In addition, the police found bloodstains in the living area.

Peterson, on April 10, again met with Bledsoe who still had not been formally charged. The pretrial hearing established that Bledsoe again signed forms acknowledging receipt of his rights and a waiver. He then told Peterson that his attorney had told him not to talk to the police about the case. Nevertheless, Peterson questioned Bledsoe, obtaining information the trial judge found was used to obtain a search warrant for Bledsoe's car. The car contained additional evidence that Bledsoe committed the

murder.[1]

Bledsoe contends that evidence obtained as a result of his April 10 meeting with Detective Peterson was inadmissible because it was obtained in violation of his right against self–incrimination guaranteed by the fifth and fourteenth amendments to the United States Constitution and article 1, section 9 of Washington's Constitution. Bledsoe claims he invoked his right to counsel at the April 10 meeting with Peterson and, therefore, evidence obtained as a result of subsequent interrogation was inadmissible.

At the outset, we note the state constitutional protection against self–incrimination is no broader than the federal protection. *State v. Mecca Twin Theater & Film Exch., Inc.*, 82 Wn.2d 87, 91, 507 P.2d 1165 (1973). Accordingly, an analysis under the federal provisions is conclusive.

An accused has a Fifth and Fourteenth Amendment right to counsel during interrogation. *Edwards v. Arizona,* 451 U.S. 477, 482, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). If an accused "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda v. Arizona,* 384 U.S. 436, 444–45, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966); *accord, State v. Chapman,* 84 Wn.2d 373, 377, 526 P.2d 64 (1974). Determinative of the issue here, then, is whether Bledsoe's statement to Peterson, that his attorney had advised him not to talk to the police, invoked his right to counsel. The issue of whether defendant's statement invoked his right to counsel involves a question of law. *See State v. Chapman,* at 377.

We conclude that Bledsoe's statement that his attorney told him not to speak to the police about the case did not invoke his right to counsel under the Fifth and Fourteenth Amendments. Bledsoe did not ask for his attorney. Rather, he merely told Peterson what his attorney had advised. The preferred procedure, even under these cir-

---

[1]It should be noted that the State had obtained a search warrant for the car *prior* to Peterson's questioning of Bledsoe on April 10, 1981.

cumstances, would have been to stop the inquiry after Bledsoe's statement. But because Bledsoe's statement did not invoke his right to counsel, the further questioning was permissible and evidence arising out of that questioning was admissible.

An examination of the primary policy underlying the rule that once an accused requests counsel the interrogation must cease reinforces this disposition. By preventing further interrogation until the accused's attorney is present, the rule primarily serves to ensure that the accused exercises free choice in making any statement after invoking his right to counsel. *See Miranda,* at 474. Here Bledsoe exercised free choice in making his statements. He had signed two forms waiving and two forms acknowledging receipt of his rights. He testified Peterson explained his constitutional rights to him. Peterson testified that Bledsoe stated he fully understood his rights. Of course, we are mindful that if a defendant invokes his right to counsel, any subsequent statement is inadmissible unless defendant initiates communication. Where the accused invokes his right to counsel, the question of whether the accused exercised free choice is irrelevant. But where, as here, the defendant does not invoke his right to counsel, it is important to determine whether the statements were provided freely. We are persuaded that Bledsoe spoke freely. Any evidence arising out of his statements to Peterson was admissible.

Bledsoe also alleges his questioning violated his right to counsel under the sixth and fourteenth amendments to the United States Constitution and article 1, section 22 (amendment 10) of Washington's Constitution. Bledsoe's constitutional rights were not violated.

■ Although the Washington Supreme Court has suggested that Washington's constitutional provision may be read more broadly than the federal provisions, *State v. Fitzsimmons,* 94 Wn.2d 858, 620 P.2d 999 (1980), the state courts have not read it more broadly. *See, e.g., State v. Hartzog,* 96 Wn.2d 383, 635 P.2d 694 (1981). It follows that an analysis under the federal constitution is determinative

here.

█ The Sixth Amendment also provides the accused with a right to counsel. "[T]he right to counsel does not depend upon a request by the defendant . . ." *Brewer v. Williams,* 430 U.S. 387, 404, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977). Thus, even if Bledsoe did not explicitly assert his right to counsel, that right exists and a waiver must be shown to admit evidence arising out of statements made at the police interrogation. To establish a waiver of the right to counsel, the State must prove an intentional relinquishment of a known right to counsel. *E.g., Brewer,* at 404. If there is substantial evidence to support the trial court's decision that defendant waived his right to counsel, the decision will be upheld. *See State v. Braun,* 82 Wn.2d 157, 160, 509 P.2d 742 (1973).

Here, there was substantial evidence to support the trial court's decision that Bledsoe waived his right to counsel. In *State v. Vannoy,* 25 Wn. App. 464, 610 P.2d 380 (1980), the court recognized that a signed waiver form alone is strong, but not sufficient, evidence to prove waiver. *Vannoy,* at 470. In this case there was evidence Bledsoe signed two forms each waiving and acknowledging his rights. Furthermore, there was evidence Bledsoe stated to the interrogating officer that he fully understood his rights. There was substantial evidence to find Bledsoe waived his right to counsel.

█ Even assuming the court erred in admitting evidence resulting from the April 10 conversation, the error was harmless. Even an error affecting a constitutional right may be harmless. *Chapman v. California,* 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Evans,* 96 Wn.2d 1, 4, 633 P.2d 83 (1981). To find such error harmless the court must find it harmless beyond a reasonable doubt. *Chapman v. California,* at 24; *Evans,* at 4.

The error was harmless beyond a reasonable doubt because the evidence presented unconnected with the April 10 meeting shows beyond a reasonable doubt that defend-

ant committed first degree murder. There was testimony that Bledsoe admitted to two witnesses that he had killed a woman. The witnesses also noticed blood on Bledsoe. Police found the revolver that fired the shots that killed Kelly in Bledsoe's bedroom. In addition, there was testimony that a blanket wrapping the body was from defendant's home. Without the evidence resulting from the April 10 meeting, it is clear beyond a reasonable doubt that the jury would have found Bledsoe guilty. Even assuming the court erred in admitting evidence arising out of the April 10 interrogation, it was harmless error.

Bledsoe next complains the trial court erred by failing to define intent in its jury instructions. The court's instructions were proper. Instruction 6 stated:

> A person commits the crime of murder in the first degree when, with a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person.
>
> Premeditated means thought over beforehand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed.

■ We find the trial court's instructions on intent were proper for a number of reasons. First, the defendant waived his right to object to the lack of an instruction defining "intent." "In the absence of either a violation of a defendant's constitutional right or a request to instruct, there can be no error assigned on appeal to a trial court's failure to give an instruction." *State v. Davis,* 27 Wn. App. 498, 505, 618 P.2d 1034 (1980). Here, defendant failed to request a jury instruction on a definition of intent. Thus, to raise the issue on appeal the failure to define "intent" in the instruction must have deprived defendant of a constitutional right.

■ The failure to define intent in the instruction was

not an error of constitutional magnitude. In *State v. Pawling,* 23 Wn. App. 226, 597 P.2d 1367 (1979), this court stated:

> The constitutional requirement is only that the jury be instructed as to each element of the offense charged. . . . The failure of the court . . . to define further one of those elements is not within the ambit of the constitutional rule.

*Pawling,* at 232–33. Here the trial court instructed the jury on each element of the crime. Where the element is not commonly understood, however, failure to define it does fall within the constitutional rule. *Davis,* at 505. The term "intent" is commonly understood. *Cf. State v. Shipp,* 93 Wn.2d 510, 516, 610 P.2d 1322 (1980) ("The word 'knowledge' has an ordinary and accepted meaning."). There was no constitutional requirement to further define intent in the instructions. There was no violation of a constitutional right and, consequently, the issue may not be raised on appeal.

Furthermore, in light of other instructions, the lack of an instruction defining intent, even if error, was harmless. In *State v. Wheeler,* 95 Wn.2d 799, 808, 631 P.2d 376 (1981), the court indicated that an error in instructions may be made harmless if other instructions were sufficient. Here, the court's instruction on premeditation addressed the considerations an instruction on intent would have addressed. Moreover, where defendant's theory of defense does not involve the issue of intent, an improper instruction on intent is harmless. *See State v. Fernandez,* 29 Wn. App. 278, 281, 628 P.2d 827 (1981). Here Bledsoe's theory of defense was that he did not commit the murder. His state of mind was not relevant to the defense. The alleged error was harmless.

Finally, the defendant in his pro se brief argues the trial court's burden of proof instruction was improper because it shifted the burden of proof. The court used the standard instruction. Defendant's argument is without merit.

728

We affirm the judgment of the trial court.

WILLIAMS and CORBETT, JJ., concur.

Reconsideration denied April 4, 1983.

Review denied by Supreme Court June 3, 1983.