[No. 14237–2–I.   Division One.   April 9, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. KEVIN LAWRENCE BOOT, *Appellant.*

*Jonathan S. Cole* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Celeste Stokes, Deputy,* for respondent.

RINGOLD, J.—Kevin Lawrence Boot appeals his conviction for first degree rape, second degree robbery, and as a habitual criminal. He contends the court erred in admitting an identification based on a photo montage, failing to define "theft" and "intent," and in using a conviction which was on appeal in the habitual criminal trial. Boot also assigns error to the State's failure to hold a court ordered pretrial lineup. We find no error and affirm.

Boot was convicted after a jury trial on charges of first degree rape, RCW 9A.44.040(1)(b), and second degree robbery, RCW 9A.56.210. He was convicted of being a habitual criminal in a subsequent bench trial, based on two prior burglary convictions.

The rape and robbery charges arose from an incident on February 27, 1982. The victim was on her paper route at approximately 4:55 a.m. She testified that she passed a man, later identified as Boot, who said "Good morning" to her. When she looked back, she saw the man dashing to her parked car, a yellow Plymouth Arrow. She ran back to the car and struggled with him. He forced her into the car and began driving around. Eventually he ordered her to perform an act of oral sex. He later pushed her into the backseat of the car and forced her to have intercourse with him. After the assailant shoved her out of the car and drove away, the victim went to a nearby house and phoned 911. Police officers arrived within a few minutes.

The victim described the assailant as either light black or dark white, and wearing a scarf, ski jacket, and tinted glasses, which broke during the struggle. She said he was wearing blue and white tennis shoes, possibly Nikes, and he took her gloves and $4.25.

Linda Wolfe testified that she saw a man drive up in front of her house in a yellow Plymouth Arrow, jump out of the car, and run into an adjacent yard. Officers arrived a few minutes later with a tracking dog that located Boot beneath some bushes. Wolfe identified the man she saw running from the car as the man the officers found in the bushes, but could not identify Boot in court. Boot had $4.25 and broken glasses in his pocket when arrested.

Boot was incarcerated on February 27. He alleges that he asked for a lawyer, but none was provided. Detective Lorette testified that he asked Boot to participate in a lineup on March 1 and Boot refused to cooperate. Boot contends that he was willing to participate in a lineup but was not asked to do so. The victim identified Boot from a photo montage on March 3. The court admitted the montage identification and an in–court identification at trial. Boot was convicted of the charged offenses and later found to be a habitual criminal on the basis of 1974 and 1979 burglary convictions.

### INTENT AND THEFT DEFINITIONS

Boot argues that the failure to define intent requires reversal of both the rape and robbery charges, and that failure to define theft requires reversal of the robbery charge. *State v. Allen,* 101 Wn.2d 355, 678 P.2d 798 (1984). Boot admits that he did not request definitions of these terms, but contends that the failure to define them is a constitutional error which may be raised for the first time on appeal. RAP 2.5(a)(3).

In *State v. Pawling,* 23 Wn. App. 226, 232–33, 597 P.2d 1367, *review denied,* 92 Wn.2d 1035 (1979), this court held that failure to define a term is not constitutional error, stating:

> The constitutional requirement is only that the jury be instructed as to each element of the offense charged. . . . The failure of the court . . . to define further one of those elements is not within the ambit of the constitutional rule.

(Citation omitted.) In recent cases, however, this court has said in dicta that where the element is not commonly understood failure to define it does fall within the ambit of the constitutional rule. *State v. Bledsoe,* 33 Wn. App. 720, 727, 658 P.2d 674, *review denied,* 99 Wn.2d 1019 (1983); *State v. Davis,* 27 Wn. App. 498, 505, 618 P.2d 1034 (1980).

The Supreme Court held in *Allen* that the statutorily defined mental states, such as knowledge and intent, have a technical meaning, and that these terms should be defined for the jury. In effect, the *Allen* court held that "intent" is not a commonly understood term. Under the reasoning of *Bledsoe* and *Davis,* therefore, it would be constitutional error to fail to define intent. The *Allen* court did not consider whether failure to define a term is constitutional error, holding simply that the definition of knowledge must be given when requested by the defendant. Boot did not request the definition of either intent or theft.

■ We need not decide whether definition of terms is constitutionally mandated or whether *Allen* applies only when the definition is requested. Even assuming that it was error to fail to define intent and theft, the error was harmless because these elements were not at issue in either charge. Boot's defense was misidentification. "[W]here defendant's theory of defense does not involve the issue of intent, an improper instruction on intent is harmless. *See State v. Fernandez,* 29 Wn. App. 278, 281, 628 P.2d 827 (1981)." *Bledsoe,* at 727. Additionally, there was overwhelming evidence of guilt, and the lack of definitions did not contribute to the verdict. *State v. Belmarez,* 101 Wn.2d 212, 676 P.2d 492 (1984).

## PRETRIAL LINEUP

On April 17, 1982, the trial court granted the defendant's motion requiring the State to hold a lineup. No lineup was held. Nothing in the record indicates why the State did not have the lineup or that the defendant ever attempted to compel the State to comply with the court order. Boot argues that the lineup could have provided exculpatory evi-

dence and that the State violated his right to due process by failing to hold the lineup, relying on *Wardius v. Oregon,* 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208 (1973) and *Evans v. Superior Court,* 11 Cal. 3d 617, 522 P.2d 681, 114 Cal. Rptr. 121 (1974). In *Wardius,* the Court held that defendants must have discovery rights reciprocal to those given the State. In *Evans,* a trial judge ruled that the defendant was entitled to a lineup, but that the trial court lacked the discretion to compel the State to hold a lineup. The California Supreme Court reversed, finding that the trial court has authority to compel a lineup when necessary to afford due process.

The Washington courts have not held that there is a constitutional right to a lineup. CrR 4.7(b)(2), however, provides in part that "the court on motion of the prosecuting attorney *or the defendant,* may require or allow the defendant to . . . appear in a lineup . . ." (Italics ours.) Constitutional issues should not be decided unnecessarily. *Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 645 P.2d 697 (1982). Because there is an applicable court rule providing for a lineup at the defendant's request, and because the defendant utilized this rule to obtain a discovery order, we need not determine whether there is an independent due process right to a lineup.

*Wardius* requires that reciprocal discovery be available to the defendant and the State. CrR 4.7 complies with *Wardius* by providing equal access to a court ordered lineup. Our court rules provide that the court may order a lineup, distinguishing this case from *Evans.*

Boot did not attempt to enforce the lineup order before or during trial. CrR 4.7(h)(7)(i) provides sanctions for violation of a discovery order:

> (i) if at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the

action or enter such other order as it deems just under the circumstances.

Awarding sanctions for discovery violations is within the discretion of the trial court. Discovery violations should be raised in the trial court so that the court can compel discovery if necessary. *State v. Brush,* 32 Wn. App. 445, 456, 648 P.2d 897 (1982), *review denied,* 98 Wn.2d 1017 (1983). The language of the rule itself indicates that the party should raise noncompliance with the discovery rules "during the course of the proceedings".

A party may choose not to proceed with discovery for tactical reasons. Possibly the defense believed the lineup would be incriminating rather than exculpatory. Allowing a party to raise the denial of discovery on appeal after failing to raise the issue below would allow simultaneous avoidance of harmful discovery and reversal for failure of discovery. Failure to raise the issue below waives the right to assign error to the violation on appeal.

## Photo Montage

Boot next argues that it was error to admit the identification based on a photo montage when the defendant was in custody and willing to be in a lineup at the time the photo montage was used. *State v. Nettles,* 81 Wn.2d 205, 209, 500 P.2d 752 (1972). He contends that photo montage identifications should be excluded unless the State demonstrates extenuating circumstances justifying their use. *State v. Hilliard,* 89 Wn.2d 430, 573 P.2d 22 (1977).

Boot does not challenge the photo array itself as suggestive, nor does he assert that any improper conduct occurred during the photo identification. Boot's only argument is that use of a photo montage is per se violative of due process when the defendant is available for a lineup. While the Washington Supreme Court has held that a lineup is preferable when the defendant is in custody, *Nettles,* the court has declined to hold that an identification based on a photo montage is per se inadmissible when the defendant is available for a lineup. *Hilliard.*

This court, in *State v. Burrell,* 28 Wn. App. 606, 625 P.2d 726 (1981) and subsequent cases, rejected the per se rule in favor of a 2–part balancing test. First, it must be determined whether the identification procedure was "impermissibly suggestive." Second, if the procedure was suggestive, the court must balance the "corrupting effect" of the suggestive identification against other factors indicating the reliability of the identification. *Burrell,* at 610. Boot does not challenge the photo montage as impermissibly suggestive, except insofar as it was used instead of a lineup. We therefore do not reach the second step, and need not consider whether other factors establish the reliability of the identification. Both the photo montage and the in–court identification were properly admitted.

## HABITUAL CRIMINAL PROCEEDINGS

Boot was sentenced on a Pierce County burglary charge in 1974. He filed an appeal on this conviction on September 2, 1983, well after the habitual criminal information was filed. Boot objected to the use of this conviction in the habitual criminal proceedings, arguing that it was on appeal and could not be considered as a final conviction. The trial judge ruled that an appeal, for purposes of habitual criminal proceedings, is an appeal "pursued within the normal course," and allowed use of the 1974 conviction. Boot assigns error to this ruling.

Convictions that are properly on appeal may not be considered in habitual criminal proceedings because they lack the necessary element of finality. *State v. Braithwaite,* 92 Wn.2d 624, 630, 600 P.2d 1260 (1979); *State v. Alexander,* 10 Wn. App. 942, 521 P.2d 57 (1974); Annot., *What Constitutes Former Conviction,* 5 A.L.R.2d 1080 (1949). A personal restraint petition attacking a conviction does not, however, preclude the conviction from being considered in a habitual criminal proceeding. *State v. LaBeur,* 33 Wn. App. 762, 657 P.2d 802 (1983). The *LaBeur* court reasoned:

> Until relief is granted in the personal restraint petition which is a collateral attack in a civil proceeding . . . the

conviction, in light of the strong public policy in the finality of judgments, is considered final for all purposes. If the mere filing of a personal restraint petition rendered a conviction nonfinal for purposes of the habitual criminal statute, every defendant alleged to be a habitual criminal could simply file personal restraint petitions as to all prior convictions and thereby effectively prevent a habitual criminal finding. Such a result would render the habitual criminal statute a nullity.

(Citations omitted.) *LaBeur,* at 764–65. Similarly, allowing an "appeal" filed 7 years after sentencing to preclude use of the conviction in the habitual criminal proceeding would render the habitual criminal statute meaningless. A defendant could simply file appeals on all prior convictions to avoid being adjudged a habitual criminal.

An appeal does not receive the court's imprimatur upon filing. There is no right to appeal 7 years after sentencing. RAP 5.2 limits the right to file an appeal to 30 days after sentencing or post–trial motions. The proper way to attack the 1974 conviction is through a personal restraint petition, as provided in RAP 16.3 *et seq.* Boot cannot avoid *LaBeur* by terming his collateral attack an appeal. The 1974 conviction was properly before the court in the habitual criminal proceeding.

## MOTION TO STRIKE

The State moved to strike from the defendant's brief the statement "that the trial court later twice ordered a lineup to be held, on 26 April 1982 and on 11 March 1983." The State also moved to strike a transcript of a 911 call appended to the brief, and all references to a court ordered lineup.

We agree that the quoted sentence should be amended to read "the trial court ordered a lineup to be held." We also agree that the 911 tape is not part of the record and thus not properly before the court on appeal. The incorrect statement and the tape were not considered by the court in deciding the appeal. References to a court ordered lineup are proper, however, because the record establishes that a

lineup was ordered. There is no authority supporting this portion of the State's motion to strike.

The judgment and sentence is affirmed.

SWANSON and COLEMAN, JJ., concur.