812 P.2d 1107

**STATE of Arizona,**
**Appellee/Respondent,**

v.

**Ruben Martinez MADA,**
**Appellant/Petitioner.**

**Nos. 2 CA–CR 88–0289, 2 CA–CR 89–0435–PR.**

Court of Appeals of Arizona, Division 2, Department B.

March 5, 1991.

Review Denied June 25, 1991.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Jon G. Anderson, Phoenix, for appellee/respondent.

D. Jesse Smith, Tucson, for appellant/petitioner.

## OPINION

ROLL, Presiding Judge.

Defendant Ruben Martinez Mada appeals from convictions for second-degree burglary and theft of property with a value over $500. Mada's sentence was enhanced by virtue of the state's allegations that Mada had previous felony convictions and was on release at the time that the instant offenses occurred. For the reasons set forth below, we affirm.

## FACTS

Viewing the evidence in the light most favorable to upholding the verdict, *State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989), the facts are as follows.

On January 8, 1988, the victim was doing laundry in her backyard when she heard a dog barking and saw a strange car in her driveway. When she went into her house, she heard voices coming from one of the rooms, then saw the defendant coming down the hall towards her. The defendant hit her very hard and she fell backward. The victim pleaded with the defendant not to kill her. A second person then emerged from a bedroom and left the house with the defendant.

The victim observed the license number on the vehicle which was parked in her driveway. A color television set, two black and white televisions, a cassette deck, a typewriter, and jewelry were taken.

On January 13, 1988, law enforcement officers surrounded the defendant's house. The defendant, realizing that his arrest was imminent, phoned his attorney. The defendant told the police that he would "be

out in a minute" and that he was "talking to my attorney."

Shortly thereafter, the police placed the defendant under arrest. Tucson Police Officer John Figueroa advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The following then occurred:

Q. [By Defense Attorney] Were you the officer who advised him of his Miranda rights?

A. [By Officer Figueroa] Yes, sir.

Q. What was his initial response when you advised him of his Miranda rights?

A. After I read the Miranda rights from my card, he said yes, I understand them and yes, I want to answer your questions, but my attorney told me not to talk to you guys.

The police asked the defendant no questions at that time. Thereafter, Sergeant Herb Bay spoke with the defendant at the Tucson Police Department:

Q. [By Deputy County Attorney] Okay. What was the first thing you talked with Mr. Mada about?

A. [By Sergeant Bay] When I first entered into the room?

Q. Yes.

A. I walked into the room and the first thing I said to him was his name, Ruben. I told him that he had to knock this type of activity off, that sooner or later doing the things that he was doing was going to get him into a situation that he absolutely could not control.

And he made a quick statement that he did not, he did not do, he did not strike that woman, referring to the East Ohio residence.

I stopped him at that point and I said that there's some question as to whether or not you want to have an attorney present.

And he said that he had been told by his attorney, [Defense Attorney]—well, he didn't say the name at that point—but

he had been told by his attorney that he should not talk to us.

And I asked him if that's what he wanted to do. Do you want to remain silent? Do you want to wait for your attorney? Do you want to have your attorney here? Or do you want to talk to us?

He goes well, I want to talk to you, but he told me not to do so.

I said well, the decision is yours. Your attorney cannot order you to be quiet. That decision is totally yours. He gives you advice and you can take that advice or ignore that advice. It's up to you, whatever you want to do.

He said a number of times during the contact with myself and other officers, I want to talk to you. And I gave him that opportunity, once I was sure in my mind that that is what he wanted to do.

Following the events described by the officer, the defendant then proceeded to make incriminating statements.

## PROCEDURAL HISTORY

The defendant's case was presented to a grand jury. During his grand jury testimony, the defendant admitted that (1) he drove two other individuals to the victim's house, mistakenly believing that no one was home; (2) his two companions entered the house, then one of them emerged and told the defendant that items were stacked up in the house and that his help was needed to carry them out; (3) the defendant went into the house and helped remove items; and (4) while inside the house, the defendant was confronted by a woman.[1]

The defendant was indicted for second-degree burglary and theft of property having a value over $1000. The state alleged three prior convictions and also that the defendant was on release from custody in a pending matter.

Prior to trial, the defendant unsuccessfully moved to suppress post-arrest statements made to law enforcement officers.

---

1. At a post-conviction relief hearing, the defendant testified that he appeared before the grand jury against his attorney's advice, but did so on the advice of a jailhouse lawyer named Tino Ybarra.

At trial, the state's proof included the defendant's post-arrest statements to the police and excerpts from his grand jury testimony. A jury found the defendant guilty of second-degree burglary and the lesser-included offense of theft of property having a value over $500. The jury also concluded that the defendant had three prior felony convictions. The trial court found that the defendant was released on his own recognizance or otherwise when the instant offenses occurred.

## ISSUE ON APPEAL

On appeal, the defendant argues that the trial court erred in denying his motion to suppress statements.

## DISCUSSION

### A. Standard of Review

■ A trial court's ruling on a motion to suppress statements will not be reversed absent clear and manifest error. *State v. Rivera*, 152 Ariz. 507, 513, 733 P.2d 1090, 1096 (1987).

### B. Whether the Defendant Invoked His Right to Counsel

The defendant vigorously maintains that Sergeant Bay violated *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), when he questioned the defendant after the defendant indicated that his attorney had told the defendant not to answer any questions.

In *Edwards*, the defendant was arrested for murder, burglary, and robbery. After being advised of his *Miranda* rights, the defendant stated: "I want an attorney before making a deal." 451 U.S. at 479, 101 S.Ct. at 1882, 68 L.Ed.2d at 382. The next day, a county jail guard told Edwards that detectives wanted to talk to him. Edwards stated that he did not want to talk to anyone, but the guard insisted that Edwards "had to talk" and brought Edwards to the detectives. Thereafter, Edwards made incriminating statements. The Supreme Court ruled that interrogation of Edwards after he requested the presence of counsel violated Fifth and Fourteenth Amendment prohibitions against compelled self-incrimination.

The state argues that *Edwards* is distinguishable from the instant case because here, the defendant merely stated that his attorney had told him not to talk to the police. The state argues that this did not constitute invocation of his right to counsel and, at best, was an equivocal statement which the police were entitled to clarify.

■ Whether a defendant's statement to the police that an attorney has advised the defendant against talking to the police constitutes an invocation of his right to counsel is a question of first impression in Arizona. A defendant's post-arrest reference to counsel, standing alone, has been found not to constitute invocation of the right to counsel. Thus, in *State v. Moorman*, 154 Ariz. 578, 584, 744 P.2d 679, 685 (1987), a defendant's statement to law enforcement officers: "I wonder if I need an attorney. I will leave it up to you guys if I need an attorney" was held insufficient to invoke his right to counsel. 154 Ariz. at 585, 744 P.2d at 686. In *State v. Prince*, 160 Ariz. 268, 272, 772 P.2d 1121, 1125 (1989), a defendant's question of a law enforcement officer: "Do you think that I should get a lawyer?" was held to not constitute an invocation of right to counsel.

A case factually similar to the matter before us is *State v. Bledsoe*, 33 Wash.App. 720, 658 P.2d 674 (1983). There, the defendant told a detective that his "attorney had told him not to talk to the police about the case." 33 Wash.App. at 723, 658 P.2d at 676. The officer continued to question the defendant. On appeal, the Washington Court of Appeals upheld the trial court's denial of Bledsoe's motion to suppress his statements, stating:

> We conclude that Bledsoe's statement that his attorney told him not to speak to police about the case did not invoke his right to counsel under the Fifth and Fourteenth Amendments. Bledsoe did not ask for his attorney. Rather, he merely told [the detective] what his attorney had advised.

In the matter before us, the defendant did not invoke his right to counsel.

### C. *Clarification of Equivocal Response*

■ The state argues that at the most the defendant's statement regarding advice of counsel constituted an equivocal, ambivalent response.

In *Sechrest v. State*, 101 Nev. 360, 705 P.2d 626, 629 (1985), the defendant told a law enforcement officer that his attorney had advised him not to talk to the police. In response, the officer stated: "Well, there is nothing we can do to alter that, ... do you want to talk to me?" Sechrest stated that he would answer some of the questions and not others. The officer then asked if Sechrest was willing to talk to the officers, and the defendant responded affirmatively. The Nevada Supreme Court ruled that because of the ambiguity in Sechrest's response to whether he would answer questions, the officers were entitled to clarify his intent.

The defendant argues that *Minnick v. Mississippi*, — U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), requires suppression. In *Minnick*, as in *Edwards*, the defendant clearly invoked his Fifth and Fourteenth Amendment right to counsel. The defendant told federal agents to come back to question him after he obtained a lawyer who could then be present during questioning. As in *Edwards*, jailers subsequently told Minnick that he had to speak to a deputy sheriff, and Minnick did so. This case is distinguishable.

Although it was not clear and manifest error for the trial court to implicitly conclude that the defendant failed to invoke his right to counsel, in any event, any invocation was equivocal. Accordingly, it was permissible for Sergeant Bay to clarify the defendant's intent regarding waiver of right to counsel. The trial court properly denied the defendant's motion to suppress statements.

2. During sentencing, in response to the defendant's generalized complaint about the representation of his counsel, the trial court stated:
    [THE COURT]: Mr. Mada, I'm talking.

### D. *Post–Conviction Relief*

After the defendant's trial, an evidentiary hearing was held regarding denial of the motion to suppress. At this hearing, the defendant presented an affidavit from his attorney and testimony from the legal defender's secretary, the defendant's wife, and the defendant himself.

No claim was made regarding ineffective assistance of counsel or that newly discovered evidence existed, nor would such claims have been well founded.[2]

■ In ruling upon the motion to suppress statements, the trial court was restricted to evidence presented at the motion to suppress. *State v. Flower*, 161 Ariz. 283, 286 n. 1, 778 P.2d 1179, 1182 n. 1 (1989). The trial court's denial of relief following this post-verdict hearing was not erroneous.

### CONCLUSION

We have searched the record for fundamental error and found none. The defendant's convictions and sentences are affirmed.

FERNANDEZ, C.J., and HOWARD, J., concur.

You can't confess to a crime after an attorney has told you not to talk to anybody and then expect him to get you off. You can't expect that.