IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| BRIANA G. FOSTER, | No. 83599-8-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRIAN WESLEY FOSTER, | |
| Appellant. | |

BOWMAN, J. — Brian Foster appeals an order renewing a domestic violence protection order (DVPO) restraining him from contacting his former wife, Briana Wilmore.[1]  Finding no error, we affirm.

FACTS

Wilmore and Foster married in 2009.  In 2018, the parties lived in Montana.  In November 2018, they separated and Wilmore moved to Washington State.  On December 4, 2018, Wilmore petitioned for a DVPO against Foster in King County Superior Court.  In the petition, Wilmore alleged a pattern of violence and control from Foster throughout their marriage.  This included physical and sexual violence, resulting in bruises and broken ribs.

On February 19, 2019, a superior court commissioner found that Foster committed acts of violence against Wilmore and that he represented a credible threat to her physical safety.  The commissioner issued a one-year DVPO that

_____

[1] Wilmore used the last name of Foster when she filed the original petition.  She reassumed her former name after the parties divorced in September 2019.

This opinion bases the citations and pin cites on the Westlaw online version of the cited material.

restrained Foster from coming within 500 feet of Wilmore and her home, workplace, or school and from harassing, following, or committing any acts of violence against her. The order also required Foster to participate in treatment and counseling in a state-certified domestic violence (DV) perpetrator program approved by the Washington State Department of Social and Health Services (DSHS).

On February 14, 2020, Wilmore petitioned to renew the DVPO. In her petition, Wilmore explained that she continued to fear Foster and that he would resume acts of violence against her if the DVPO expired. Wilmore claimed that Foster continued his attempts to control her during their dissolution proceedings, even while the order was in place. She also told the court that her daughter "lives in the same town" as Foster and that she was "afraid to visit her" without the DVPO in place. Foster opposed the petition, arguing that he does not pose a threat to Wilmore because she now lives in Washington State and he still lives in Montana. He insisted her fear of seeing him while visiting her daughter was "unfounded" and he "want[s] nothing to do with . . . her family." He also showed proof that he completed a DV treatment program in Montana.

On April 2, 2020, a commissioner granted Wilmore's petition and renewed the DVPO for one year. The commissioner noted that Foster had not completed a DV treatment program certified by Washington State as ordered in the original DVPO, choosing instead to complete an out-of-state program with no proof that the classes were equivalent. The commissioner determined that even after

2

taking the classes in Montana, Foster "exhibits no responsibility and no accountability for his actions."

On April 1, 2021, Wilmore again petitioned to renew the DVPO, asking for an order that remained in effect for more than one year. Foster again opposed the renewal, arguing that he lives in another state, has not violated the DVPO, and completed a Montana-based treatment program. On August 13, 2021, a commissioner granted the petition and renewed the DVPO for five years. The commissioner noted that Foster still had not completed DSHS-certified counseling or DV treatment as ordered and refused to acknowledge any wrongdoing.

Foster moved to revise the commissioner's renewal order. On December 23, 2021, a superior court judge adopted the commissioner's findings and conclusions and denied the motion.

Foster appeals.

ANALYSIS

Abuse of Discretion

Foster argues the court abused its discretion by renewing the DVPO. We disagree.

A court commissioner's decision is subject to revision by the superior court. RCW 2.24.050. When, as here, the evidence before the commissioner did not include live testimony, the superior court judge reviews the commissioner's findings of fact and conclusions of law de novo, basing its decision on the evidence and issues presented to the commissioner. Id.; In re

Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). On appeal, we review the superior court's decision, not the commissioner's. In re Marriage of Williams, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). And we review an order renewing or extending a protection order for abuse of discretion. See Barber v. Barber, 136 Wn. App. 512, 516, 150 P.3d 124 (2007). A trial court abuses its discretion if it exercises its decision on untenable grounds or for untenable reasons. Rodriguez v. Zavala, 188 Wn.2d 586, 598, 398 P.3d 1071 (2017).

Former RCW 26.50.060 (2020)[2] provided the procedure to renew and extend a DVPO at the time Wilmore filed her last petition. In a petition to renew a DVPO, the petitioner must state the reasons for seeking a renewal. RCW 26.50.060(3). The statute does not require new acts of violence; instead, the petitioner must show past abuse and present fear. Barber, 136 Wn. App. at 516. If a petitioner satisfies these requirements, the trial court must grant the petition for renewal "unless the respondent proves by a preponderance of the evidence that the respondent will not resume acts of [DV] against the petitioner . . . when the order expires." RCW 26.50.060(3).

In Wilmore's 2021 petition for renewal, she detailed past abuse and reasons why she believes Foster continues to threaten her safety. At the hearing for renewal, Foster argued that he would not resume acts of DV if the DVPO expired. He claimed that he no longer poses a threat to Wilmore because he lives in Montana, Wilmore lives in Washington, and he completed a DV treatment program certified by the state of Montana. The court rejected Foster's

---

[2] In 2021, the legislature repealed and recodified chapter 26.50 RCW. LAWS OF 2021, ch. 215. Throughout this opinion, all citations to RCW 26.50.060 are to the 2020 statute.

arguments, finding he did "not meet his burden of proof by a preponderance of the evidence . . . that acts of [DV] will not continue." It expressed concern that Foster did not show "any acknowledgment or any change in behavior or any accountability." And the court found it "very telling" that Foster did not want to engage in the evaluation process as ordered in the original DVPO or "take responsibility" for his abusive conduct as the DSHS-certified treatment programs require.

Foster's refusal to comply with treatment as ordered by the court or otherwise accept responsibility for his actions were tenable grounds to conclude that Foster failed to show he would not resume acts of DV when the DVPO expired.

Foster argues the court abused its discretion because it "focused on only one of the factors" in former RCW 26.50.130(3)(c) (2019)[3] to reach its decision. Under RCW 26.50.130(3)(c), the court may consider several unweighted factors in determining whether there has been a "substantial change in circumstances" warranting termination or modification of a DVPO. Those factors include:

> (i) Whether the respondent has committed or threatened [DV], sexual assault, stalking, or other violent acts since the protection order was entered;
> (ii) Whether the respondent has violated the terms of the protection order, and the time that has passed since the entry of the order;
> (iii) Whether the respondent has exhibited suicidal ideation or attempts since the protection order was entered;
> (iv) Whether the respondent has been convicted of criminal activity since the protection order was entered;
> (v) Whether the respondent has either acknowledged responsibility for the acts of [DV] that resulted in entry of the

---

[3] Throughout this opinion, all citations to RCW 26.50.130 are to the 2019 statute.

protection order or successfully completed [DV] perpetrator treatment or counseling since the protection order was entered;

(vi)  Whether the respondent has a continuing involvement with drug or alcohol abuse, if such abuse was a factor in the protection order;

(vii)  Whether the petitioner consents to terminating the protection order, provided that consent is given voluntarily and knowingly;

(viii)  Whether the respondent or petitioner has relocated to an area more distant from the other party, giving due consideration to the fact that acts of [DV] may be committed from any distance;

(ix)  Other factors relating to a substantial change in circumstances.

RCW 26.50.130(3)(c).  But RCW 26.50.130 applies to a respondent's motion to modify or terminate a DVPO.  And at issue here is a petitioner's motion to renew a DVPO.  As a result, RCW 26.50.060 governs.  Still, as much as the court chose to consider the RCW 26.50.130(3)(c) factors to guide its analysis, Foster fails to show an abuse of discretion.

Foster argues the court focused too much on factor (v) to the exclusion of other factors such as (i), (ii), and (viii).  RCW 26.50.130(3)(c).  But the statutory factors are unweighted.  RCW 26.50.130(3)(c).  And the statute specifically directs the court not to base a determination of a substantial change of circumstances solely on the fact that time has passed without violation of the order or that respondent has relocated to an area more distant from the petitioner.  RCW 26.50.130(3)(d).[4]  Here, the record shows the court considered that Foster had not committed additional acts of DV, that several years had passed since issuance of the DVPO, and that Foster lives in Montana.  But the court ultimately concluded that Foster's refusal to comply with court-ordered

---

[4] We note that RCW 26.50.130(3)(c)(viii) also directs the court to give "due consideration to the fact that acts of [DV] may be committed from any distance."

treatment, coupled with Wilmore's frequent travel to the area where Foster resides to visit her daughter, supported renewal of the DVPO. This is not an abuse of discretion.

Foster also argues the court abused its discretion by refusing to accept his out-of-state treatment as compelling evidence under RCW 26.50.130(3)(c)(v) that he would not resume acts of DV if the DVPO expires. Foster claims that because factor (v) does not require treatment specifically to be Washington State certified, out-of-state treatment should carry the same weight. Foster's interpretation of factor (v) is incorrect.

We interpret statutes to give effect to legislative intent. Quadrant Corp. v. Growth Mgmt. Hr'gs Bd., 154 Wn.2d 224, 238, 110 P.3d 1132 (2005). We give effect to the legislature's intent by looking to the statute's plain and ordinary meaning, reading the enactment as a whole, and harmonizing its provisions with related provisions. Id. 238-39. RCW 26.50.060(1)(e) authorizes a court issuing a DVPO to order the respondent to participate in a treatment program approved under former RCW 26.50.150 (2019).[5] RCW 26.50.150 states that DSHS "must" certify any program that provides DV treatment to perpetrators of DV. In turn, RCW 26.50.130(3)(c)(v) states that the court may consider whether the respondent "successfully completed [DV] perpetrator treatment" in determining whether a respondent is likely to commit future acts of DV. The only reasonable interpretation of factor (v) when read in concert with RCW 26.50.060(1)(e) and

---

[5] Throughout this opinion, all citations to RCW 26.50.150 are to the 2019 statute.

.150 is that the legislature intended a court to consider whether the respondent completed DV perpetrator treatment approved by DSHS.

In any event, it was reasonable for the court not to give Foster's out-of-state treatment the same weight as Washington-certified treatment. First, the DVPO ordered Foster to complete DSHS-certified treatment.[6] Further, Washington-State-certified DV treatment is different than out-of-state treatment.

DV treatment in Washington must "focus primarily on ending the violence, holding the perpetrator accountable for his or her violence, and changing his or her behavior." RCW 26.50.150(4). DSHS promulgated rules to "increase accountability and competency for programs that provide [DV] intervention treatment." See former WAC 110-60A-0025(1) (2018). The rules provide minimum standards to accurately assess the needs and responsivity of perpetrators, increase the safety of victims, and hold perpetrators accountable to meet program requirements. See Id. They also provide minimum standards for the quality management of certified programs, staff qualifications and training, and treatment requirements, including a focus on accountability. Former WAC 110-60A-0125, -0240, -0310 (2018).

While Foster submitted a declaration from the director of his Montana treatment program attesting that the program is "focused on ending violence, holding the perpetrator accountable, and changing their behavior," it was tenable for the court to reject those assurances in favor of a statutory directive.

---

[6] At oral argument, Foster disputed whether the DVPO itself mandated only Washington-certified treatment. But the DVPO states, "Respondent shall participate in . . . [a] [DV] perpetrator treatment program approved under RCW 26.50.150."

The court did not abuse its discretion by renewing the DVPO.

Violation of Constitutional Right

Finally, Foster argues that ordering him to participate in Washington-State-certified DV treatment violates his right against self-incrimination under the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution. According to Foster, the order violates his constitutional right because the Washington State DV treatment program requires him to "take responsibility" for allegations levied by Wilmore and to sign releases of information that the program may share with probation officers, courts, and prosecutors. See RCW 26.50.150; former WAC 110-60A-0310.[7] We disagree.

Both the federal and Washington constitutions provide protection against self-incrimination. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. The state constitutional protection against self-incrimination is no broader than the federal protection. State v. Bledsoe, 33 Wn. App. 720, 723, 658 P.2d 674 (1983). Although both provisions refer to criminal cases, "one may assert the privilege against self-incrimination in any proceeding." State v. Brelvis Consulting LLC, 7 Wn. App. 2d 207, 218, 436 P.3d 818 (2018).

---

[7] Amici curiae Family Violence Appellate Project, Washington State Coalition Against DV, Seattle University School of Law Family Law Center, Eastside Legal Assistance Program, the Coalition Ending Gender-Based Violence, King County Sexual Assault Resource Center, and the DOVE Project filed a brief, urging us to affirm "the constitutionality of Washington's [DV] treatment program requirements" under RCW 26.50.150 and former chapter 110-60A WAC. Amici argue legislative intent, public policy, and social science "support the importance of accountability in addressing the harm caused by [DV] to victims and communities."

To establish a Fifth Amendment claim, the proponent must show (1) the testimony at issue carries the risk of incrimination and (2) the penalty suffered for refusing to testify amounts to compulsion. United States v. Antelope, 395 F.3d 1128, 1134-35 (9th Cir. 2005). The danger of incrimination must be substantial and real and not merely speculative. State v. Hobble, 126 Wn.2d 283, 290, 892 P.2d 85 (1995). And any threat of future criminal prosecution must be "reasonably particular and apparent." Antelope, 395 F.3d at 1134.

Foster cites Butler v. Kato, 137 Wn. App. 515, 154 P.3d 259 (2007), in support of his argument that the court has placed him in an untenable position. In that case, Butler was charged with driving under the influence (DUI). Id. at 520. He challenged two of the four conditions of release that the district court imposed, which required him to attend three self-help groups a week and, within 30 days, be evaluated at a state-approved alcohol treatment agency and immediately enroll in and comply with any recommended treatment program. Id. Butler challenged these conditions by writ of habeas corpus, arguing, among other things, that they amounted to compulsion under the Fifth Amendment. Id. at 520, 524. We agreed. Id. at 526, 532. We reasoned that the district court compelled Butler to participate in treatment because it warned him it would remand him into custody if he violated the conditions of release. Id. at 525-26. And his participation in treatment carried the real risk of self-incrimination because the requirements for chemical dependency assessments included information that could jeopardize his pending DUI case. Id.

Unlike Butler, the court did not compel Foster to engage in treatment by threat of incarceration. Indeed, the DVPO imposes no direct penalty for refusing to comply. Even so, as much as Foster may have been compelled to engage in treatment, he does not show a real and substantial risk of self-incrimination. Unlike Butler, Foster does not have a pending criminal charge in which information gleaned from treatment could incriminate him. Instead, he makes vague arguments that information discovered in the treatment process could result in future criminal charges. His argument is tenuous and speculative.

We reject Foster's argument that ordering him to complete DSHS-certified DV treatment placed him in jeopardy of self-incrimination.

Attorney Fees

Wilmore asks for attorney fees and costs on appeal. We may award attorney fees and costs on appeal if applicable law grants a party the right to recover attorney fees or expenses. RAP 18.1(a). In general, a party who is entitled to fees below is entitled to attorney fees if it prevails on appeal. Sharbano v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 423, 161 P.3d 406 (2007). Under RCW 26.50.060(3),[8] the court may award costs and reasonable attorney fees to a petitioner who successfully renews a DVPO. We award Wilmore court costs and attorney fees subject to compliance with RAP 18.1.

---

[8] The statutes Wilmore cites, RCW 7.105.405 and .310, were not in effect until July 2022. LAWS OF 2021, ch. 215.

11

No. 83599-8-I/12

We affirm the order renewing the DVPO.

Brennan, J

WE CONCUR:

Birk, J.        Dwyer, J.

12